**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PAUL GLOVER; GLOVER
CONSTRUCTION CO., INC.,

      Plaintiffs - Appellees,

v.

CARLISLE MABREY, III; JAMES
DUNEGAN; DAN OVERLAND; JACKIE
COOPER; LOYD BENSON; BRUCE
BENBROOK; BRADLEY W. BURGESS;
GUY BERRY; SKIP NICHOLSON;
NORMAN N. HILL; GARY RIDLEY;
GEORGE RAYMOND; GARY EVANS;
DARREN SALIBA,

      Defendants - Appellants.

No. 08-7048
(E.D. Okla.)
(D.C. No. 6:07-CV-00112-FHS)

**ORDER**

Before **LUCERO**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Appellant George Raymond and Appellees Paul Glover and Glover Construction

Co., Inc. separately petitioned this court for panel rehearing in the above captioned

appeal. The panel has decided to grant each petition for the limited purpose of clarifying

the previous Order and Judgment.

The previous Order and Judgment, *Glover v. Mabrey,* 2010 WL 2222488 (10th

Cir. June 4, 2010), is vacated and the attached Order and Judgment is substituted in its place.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

# UNITED STATES COURT OF APPEALS

## TENNTH CIRCUIT

PAUL GLOVER; GLOVER
CONSTRUCTION CO., INC.,

    Plaintiffs - Appellees,

v.

CARLISLE MABREY, III; JAMES
DUNEGAN; DAN OVERLAND; JACKIE
COOPER; LOYD BENSON; BRUCE
BENBROOK; BRADLEY W. BURGESS;
GUY BERRY; SKIP NICHOLSON;
NORMAN N. HILL; GARY RIDLEY;
GEORGE RAYMOND; GARY EVANS;
DARREN SALIBA,

    Defendants - Appellants.

No.  08-7048
(E.D. Okla.)
(D.C. No. 6:07-CV-00112-FHS)

## ORDER AND JUDGMENT[*]

Before **LUCERO**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Glover Construction Company and its owner, Paul Glover (collectively "Glover")

filed suit under 42 U.S.C. § 1983 against the Oklahoma Department of Transportation

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A).  Citation to unpublished decisions is not prohibited.  Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value.  10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished).  *Id.*

(ODOT) Commissioners and six department officials (collectively the ODOT defendants).[1] The complaint alleged the ODOT defendants retaliated against Glover in violation of its First and Fourteenth Amendment rights. The ODOT defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted and variously asserted the affirmative defenses of absolute and qualified immunity. The district court denied the motion to dismiss and rejected ODOT's affirmative defenses. We affirm in part, reverse in part and remand for further proceedings.

## I.    BACKGROUND

By statute, ODOT and its Commissioners are responsible for, among other things, the construction and maintenance of Oklahoma highways. Okla. Stat. Ann. tit. 69, § 304 (2009). ODOT construction projects are contracted through a competitive bidding process governed by Oklahoma's Competitive Bidding Act of 1974, which authorizes ODOT to prequalify contactors to bid on projects. Okla. Stat. Ann. tit. 69, § 1101 (2009); Okla. Stat. Ann. tit. 61, § 118 (2009). According to Glover's second amended complaint, it has contracted with ODOT to perform construction work for almost thirty years and was a prequalified bidder.

On a number of occasions, Glover and ODOT have not seen eye-to-eye on

---

[1] The defendants included the Commission members (Carlisle Mabrey, III, James Dunegan, Dan Overland, Jackie Cooper, Loyd Benson, Bruce Benbrook, Bradley Burgess, and Guy Berry). Other named ODOT officials were Gary Ridley (chief executive of ODOT), George Raymond (construction engineer and an executive officer of ODOT), Gary Evans (ODOT director), Darren Saliba (ODOT division engineer), Normal Hill (ODOT general counsel), and Skip Nicholson (ODOT investigator). All defendants were sued in their individual capacity.

contract terms or the quality of Glover's work. Glover has often used administrative and judicial channels to challenge ODOT's contract decisions and the adequacy of its payment. A particularly contentious dispute involved construction on Oklahoma Highway 64. Glover won the contract and constructed a portion of the highway. The construction encountered major problems which Glover blamed on ODOT's design and ODOT blamed on Glover's poor workmanship and use of improper materials. The dispute was widely publicized in the media. As a result, tensions rose between Glover and ODOT.

Glover obtained a court order enjoining ODOT's threatened revocation of its prequalification status. While the complaint does not set forth any dates, ODOT allegedly revoked Glover's prequalification status while the injunction was in effect.[2] Glover then filed this action. It alleged four constitutional violations: Count I, retaliation for the exercise of First Amendment rights to petition for the redress of grievances; Count II, retaliation for the exercise of Fourteenth Amendment rights to due process and a First Amendment right to speak on matters of public importance; Count III, violation of Glover's Fourteenth Amendment right to equal protection; and Count IV, retaliation for Glover's exercise of First Amendment right to free speech.

The ODOT defendants filed a motion to dismiss all claims for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil

---

[2] The Oklahoma Court of Civil Appeals reversed the injunction on August 10, 2007. At oral argument ODOT's counsel stated he believed the injunction was dissolved after ODOT revoked Glover's prequalification status.

Procedure. The motion also asserted all defendants were entitled to qualified immunity and Hill (ODOT's general counsel), Nicholson (an ODOT investigator), and the Commission members were entitled to absolute immunity. Stating the decision was a "close call," the district court denied the motion to dismiss and found Glover sufficiently alleged facts to support its claims. (R. Vol. I at 144.) It determined the ODOT defendants were not entitled to qualified immunity because retaliation for exercising First Amendment rights is a clearly established constitutional violation. It denied absolute immunity because the record was not sufficiently developed to apply the necessary "functional" analysis set forth in *Forrester v. White*, 484 U.S. 219, 229 (1988) (the inquiry focuses on "the nature of the function performed [by the official], not the identity of the actor who performed it"). This interlocutory appeal followed.

## II.    DISCUSSION

A.    Jurisdiction

"Under the Supreme Court's collateral order doctrine, a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Weise v. Casper*, 507 F.3d 1260, 1263 (10th Cir. 2007) (citations and quotations omitted). "[T]he Supreme Court has limited appeals of interlocutory decisions denying the defense of qualified immunity to cases presenting neat abstract issues of law." *Id.* at 1263-64 (quotations omitted). "[P]retrial determinations of evidentiary sufficiency in qualified immunity cases are not immediately appealable." *Id.* at 1264.

Glover asserts we lack jurisdiction because the district court found its complaint

- 4 -

"states plausible violations of Plaintiffs' constitutional rights . . . and that those rights were clearly established." (Appellee's Br. at 3.) It relies on *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995), where the Court held it lacked jurisdiction over an appeal by police officers because "[t]he [qualified immunity] order in question resolved a *fact*-related dispute about the pretrial record." *Id.* at 307 (emphasis added).

One issue is not properly before us. The district court determined the record was insufficient at this stage of the litigation to resolve the absolute immunity claims. When determining whether a defendant is entitled to absolute immunity, we employ a functional approach. See *Perez v. Ellington*, 421 F.3d 1128, 1133 (10th Cir. 2005) (quotations omitted). The district court stated "the functions of the various Defendants, and the agency itself, ha[d] not been established by any factual record which the Court can evaluate." (R. Vol. I at 148.) Because this is a factual determination, we do not address it on this appeal.[3] *Weise,* 507 F.3d at 1264 ("If a district court cannot rule on the merits of a qualified immunity defense at the dismissal stage because the allegations in the pleadings are insufficient as to some factual matter, the district court's determination is not immediately appealable.").

Other than in the absolute immunity context, Glover's jurisdictional argument has no merit. The sufficiency of a complaint is a question of law, as is the existence of a

---

[3] The denial of absolute or qualified immunity on a motion to dismiss does not preclude the ODOT defendants from raising the issue in a later motion for summary judgment when the record is more fully developed. *Weise*, 507 F.3d at 1265 (recognizing "the denial of qualified immunity at the dismissal stage does not preclude a renewal of that defense at summary judgment after further factual development has occurred").

- 5 -

clearly established constitutional violation. *See Id.* at 1267 ("the denial of qualified immunity on a motion to dismiss constitutes a legal decision because Rule 12(b)(6) requires a court to accept as true all well-pleaded facts in the complaint"). Because the remaining issues involve questions of law rather than fact, we have jurisdiction over this interlocutory appeal.

B.      Standard of Review

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotations omitted). "Because qualified immunity is an immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial." *Id.* (quotations omitted). The "plaintiff must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1948 (2009). The only questions before us are whether Glover's complaint sufficiently alleges the individual defendants violated a constitutional right and whether the right was clearly established at the time of the defendants' conduct. *See Bryson v. Gonzales*, 534 F.3d 1282, 1285 (10th Cir. 2008).

We review the grant or denial of a motion to dismiss under Rule 12(b)(6) de novo, "accepting all well-pleaded factual allegations in the complaint as true." *Howard v. Waide,* 534 F.3d 1227, 1242-43 (10th Cir. 2008). To withstand a motion to dismiss, a "complaint must contain enough allegations of fact 'to state a claim to relief that is

plausible on its face.'" *Robbins v. Okla. ex rel. Dep't of Soc. Servs.,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The purpose of this "plausibility" requirement is "to weed out claims that do not in the absence of additional allegations have a reasonable prospect of success [*and*] inform the defendants of the actual grounds of the claim against them." *Id.* at 1248 (emphasis added). Applied to all civil actions, the *Twombly* standard "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation" and requires more than "naked assertions devoid of factual development . . . more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quotations omitted). The necessary degree of specificity is highly dependent on the context and type of case. *Robbins*, 519 F.3d at 1247. The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotations omitted).

The ODOT defendants claim Glover failed to allege a sufficient factual basis to establish a constitutional violation. Many allegations in Glover's complaint are conclusory statements providing no concrete way of identifying what actions were taken, when, or in some instances by whom. A number of allegations refer generally to "ODOT," "ODOT officials," and "top executives," or "an ODOT executive." (R. Vol. 1 at 22-25, 28-29, ¶¶ 18-24, 26, 28, 30, 44, 49.) Without more, these allegations provide no indication which defendant must defend against the charge. In addition, other allegations provide no dates or other information with which one might put the alleged activities in

- 7 -

some sort of temporal context. We will not consider these general and/or conclusory allegations. *See Iqbal*, 129 S. Ct. at 1950 ("a court . . . can . . . begin by identifying pleadings that . . . are not entitled to the assumption of truth"). We consider whether the remaining factual allegations are sufficient to "nudge [these] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

C.      Count I - Retaliation for Public Criticism

The First Amendment forbids "abridging the freedom of speech, or . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I. It is well-established "the First Amendment bars retaliation for protected speech." *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *see also Wilkie v. Robbins*, 551 U.S. 537, 555 (2007) ("longstanding recognition that the Government may not retaliate for exercising First Amendment speech rights"). Whether particular speech is protected depends on the nature of the expression as well as the speaker's relationship to the government. For example, the speech of a private citizen generally enjoys broader protections than the speech of public employees or public contractors. *See Bd. of Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S. 668, 673 (1996) (public contractor); *Connick v. Myers*, 461 U.S. 138, 146 (1983) (government employee); and *Pickering v. Bd. Of Educ. of Twp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 568 (1968) (public high school teacher). The Supreme Court recently decided corporate entities are entitled to the protections of the First Amendment and should not be "treated differently under the First Amendment simply because they are not 'natural persons.'" *Citizens United v. Fed. Election Comm'n.*, --- S. Ct. ---, 2010 WL 183856, at *20 (2010).

In *Pickering*, the Supreme Court considered whether a teacher's criticism of its employer was protected speech. The Court recognized "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." 391 U.S. at 568. To balance the "interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," the Court adopted a four-part test. *Id.* A government employee claiming a violation of his or her First Amendment rights must show 1) the speech in question involves a matter of public concern; 2) the employee's interest in the expression outweighs the government employer's interest in regulating the speech; and 3) the speech was a substantial factor driving the challenged governmental action. *See Kent v. Martin*, 252 F.3d 1141, 1143 (10th Cir. 2001).[4] If the employee establishes these elements, the employer may still

---

[4] The Supreme Court recently modified the *Pickering* test as applied to public employees. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006); s*ee also Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (describing the "'*Garcetti/Pickering*' analysis"). In *Garcetti*, the Court determined speech pursuant to an employee's official duties is not protected because to so hold "would commit state and federal courts to a new, permanent, and intrusive role, mandating judicial oversight of communications between and among government employees and their superiors in the course of official business." *Garcetti*, 547 U.S. at 423. As a result, whether an employer has permissibly acted in response to an employee's speech now contains *Pickering's* four elements and, in addition, an initial element considering "whether the employee speaks pursuant to his official duties." *Brammer-Hoelter*, 492 F.3d at 1202 (quotation omitted). The first three elements are issues of law to be decided by the court; the last two are factual issues to be decided by the factfinder. *Id.* at 1203. The Supreme Court has yet to speak on whether or how this modification may affect the analysis in the context of an independent contractor. Because Glover's criticism of ODOT was clearly not pursuant to

defeat the claim upon a demonstration that (4) the employer would have taken the same employment action in the absence of the protected speech. *Id.*

In this case, Glover's lawsuit was brought in its capacity as a public contractor. A public contractor's retaliation claim based on its criticism of the contracting government agency is protected activity if it can pass the "*Pickering* balancing test, adjusted to weigh the government's interests as contractor rather than as employer . . . ." *Umbehr*, 518 U.S. at 673. Thus, to pass the first hurdle, Glover must allege its speech involved a matter of public concern.

Whether speech involves a matter of public concern depends on "the content, form, and context" of the speech. *Connick*, 461 U.S. at 148. "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004). Our focus is "on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000).

Glover alleges its comments to the media blamed the increased costs of the Highway 64 project on ODOT's faulty design. "[T]he use of public funds and . . . the objectives, purposes and mission" of a government agency are "well within the rubric of matters of 'public concern.'" *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1263 (10th Cir.

its official duties, we need not address the issue here.

- 10 -

2005) (quotation omitted); *see also Gardetto v. Mason*, 100 F.3d 803, 814 (10th Cir. 1996) ("persons able to offer a well-informed perspective on expenditures of public funds may be especially valuable to public debate"). It claims the speech concerned "when and how a public roadway fail[ed] . . . [and] relate[d] to the expenditure of tax funds by government officials." (R. Vol. I at 25.) Glover sufficiently alleged its public comments regarding ODOT's poor design of Highway 64 was protected speech. *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1234 (10th Cir. 1998) (speech calculated to disclose wrongdoing or inefficiency in the conduct of official duties).

Moving to *Pickering's* second step, ODOT has not argued it has an overriding interest in limiting Glover's protected speech. Without more from ODOT, the asserted public interest in learning the true cause of possibly inefficient or wasteful public expenditures would normally outweigh ODOT's interest in suppressing these comments. We do not decide that *no* interest can satisfy *Pickering*'s second step, only that no such interest has yet been asserted.

Having sufficiently alleged a protected activity, we consider Glover's allegations as they relate to specific acts by individual defendants. Glover alleges retaliation in four different forms: (1) an investigation by Skip Nicholson, an ODOT investigator, (2) a policy instituted by Darren Saliba, an ODOT engineer, (3) statements by George Raymond, an ODOT construction engineer, and (4) the suspension of Glover's prequalified bidder status by the ODOT Commissioners based on recommendations from ODOT General Counsel Hill, CEO Ridley and ODOT Director Evans.

- 11 -

1.      Skip Nicholson

Glover claims ODOT investigator Nicholson, with help and encouragement from ODOT general counsel, Norman Hill, initiated an investigation of Glover in violation of ODOT policy.[5] (R. Vol. 1 at 26.)  Paragraph 37 of the complaint alleges Nicholson encouraged Hill to seek a search warrant for Glover's "home and/or office" knowing there was no probable cause; Nicholson encouraged law enforcement officers to subpoena records from hotels where Mr. Glover stayed on vacation; Nicholson investigated insurance claim allegations unrelated to ODOT; Nicholson once called an environmental agency because trash was burned on Mr. Glover's property and; Nicholson and Hill caused Glover to be audited by the IRS.  (R. Vol. I at 25-26.)

Other than the IRS audit, Glover does not allege Nicholson's (or Hill's) actions actually caused a third party to take any action against it.  The complaint does not allege Nicholson's "encouragement" led to the issuance of a warrant or subpoena or a response from the (unknown) environmental agency.  It does not allege Nicholson's insurance investigation involved contact with Glover or resulted in harm.  The complaint does not claim these activities had any impact on the report recommending Glover's debarment.  Merely "encouraging" or engaging in action is not an actionable constitutional violation unless it results in some harm to the plaintiff.  A claim must assert specific injuries-in-fact caused by the individual defendants.  *See Pignanelli v. Pueblo Sch. Dist. No. 60*, 540

---

[5] Allegations of policy violations are irrelevant because Section 1983 "does not provide a remedy for abuses that do not violate federal laws." *Collins v. City of Harker Heights*, 503 U.S. 115, 119 (1992).

F.3d 1213, 1219 (10th Cir. 2008) (injury-in-fact must be fairly traceable to the defendants); *see also Loving v. Boren*, 133 F.3d 771, 772-73 (10th Cir. 1998) (plaintiff must show injury-in-fact to have standing in the First Amendment context).

Similarly, while Glover does say "Nicholson, Hill and other defendants . . . unlawfully caused" an IRS audit, the complaint does not say when or how this was done. Without deciding the issue, for present purposes we assume the cost and time spent complying with an audit could satisfy the injury-in-fact requirement. Even so, the complaint does not allege the IRS investigation was without cause – a necessary element of his claim.[6]

The Supreme Court has specifically addressed the parameters of a claim for retaliation such as the one Glover alleges here. In *Hartman v. Moore*, the plaintiff filed a claim for civil liability under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)[7] alleging, *inter alia*, postal inspectors launched a criminal investigation against

---

[6] To be sure, in some circumstances "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990) (quoting *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir.1984). In *DeLoach*, we held a police detective could not "hide behind the decisions of others involved in DeLoach's arrest and prosecution if she deliberately conceals and mischaracterizes exculpatory evidence." *Id*. at 621. We have also held that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . . [and] [t]his principle applies even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotations and citations omitted). But here, Glover's claim does not rely on any direct action by Nicholson, as was claimed by the prison inmate, nor does he allege Nicholson misled the IRS.

[7] "[A] *Bivens* action is the federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983." *Hartman*, 547 U.S. 254, n.2.

- 13 -

him without cause and they pressured the United States Attorney's Office to have him indicted in retaliation for his lobbying activities and criticism of the postal service. 547 U.S. 250, 254 (2006). The Court distinguished "ordinary" retaliatory claims from those in which the defendant caused another party to act, stating:

> [T]he defendant will be a nonprosecutor, an official, like an inspector here, who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory prosecution, but for successful retaliatory inducement to prosecute . . . . Thus, the causal connection required here is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another.

*Id*. at 262. In that situation, the Court determined a plaintiff must plead and prove "that the nonprosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring charges that would not have been initiated without his urging." *Id.* In other words, "[s]ome sort of allegation . . . is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity." *Id*. at 263.

While *Hartman* addressed only a claim based on a criminal prosecution, we have extended its principles to circumstances similar to those presented here. *See McBeth v. Himes,* 598 F.3d 708 (10th Cir. 2010). McBeth, a licensed day care operator claimed, Himes, a police investigator, complained to the Department of Human Services (DHS) that she was not cooperating with his investigation in retaliation for her consulting an attorney. She alleged she was informed by DHS that her license would be suspended because of the complaint. "Directly as a result of this 'coercion,' . . . she surrendered her license." *Id.* at 713. Thus, McBeth claimed Himes caused her to lose her license in

- 14 -

retaliation for exercising her First Amendment rights.

Himes contended "his alleged complaint to DHS could not have caused DHS to seek suspension of McBeth's daycare license because DHS already possessed the legal authority to suspend McBeth's license and would have done so even in the absence of his complaint." *Id*. at 717. Although McBeth argued *Hartman* was limited to claims of retaliatory prosecution, we disagreed. We held the retaliation claim against Himes was actually a "successful retaliatory inducement" claim. *Id*. at 719. Thus, "the logic of [*Hartman*'s] rule necessitates its application . . . where 'multi-layered causation' complicates the court's inquiry into whether the defendant's retaliatory animus caused the adverse action that harmed the plaintiff." *Id*. at 720.

The authority of the IRS to – and its decision to in fact – conduct an audit triggers the multi-layered causation pleading requirements. Glover must allege (and ultimately prove) that the officials who undertook the allegedly adverse action, IRS agents, lacked cause to do so. The blanket allegation of "unlawfully caus[ing]" does not allege with sufficient specificity that the IRS lacked cause to conduct any audit which took place. (R. Vol. I at 26.) Because the complaint fails to allege Nicholson's investigation caused harm to Glover, the First Amendment retaliation claim against Nicholson fails to state a constitutional violation.

2.     Darren Saliba

Glover alleged while ODOT engineer Saliba supervised its contracts, he "adopted an arbitrary and unreasonable policy of never approving any claims by [Glover], no matter how reasonable, after [Glover] had been awarded a contract with ODOT." (R.

- 15 -

Vol. I at 27.)  Glover points to two instances where "Saliba arbitrarily denied the use of [recycled asphalt] thereby increasing [Glover]'s costs" causing Glover to file a claim, and "on another occasion, . . . Saliba would not approve an additional cost for disposing of . . . debris."  (*Id.*at 27-28)  Glover alleged Saliba's denials were in retaliation for Glover's claim ODOT had poorly designed defective roads and sought redress in court.  (*See id.*)

While Glover is not required to prove its case in the pleadings, the complaint must allege *facts* which plausibly support the allegation that Saliba's alleged actions involved a retaliatory motive.  *See Iqbal*, 129 S. Ct. at 1952 (a First Amendment complaint alleging a policy against post-September-11 detainees "must contain facts plausibly showing that petitioners purposefully adopted a policy . . . because of . . . race, religion, or national origin").  We examine the allegations as they relate to Saliba's actions.

The complaint alleges that each defendant acted "in concert" with each other, presumably to link the commissioners' and other defendants' retaliatory intent to Saliba. (R. Vol. I at 20.)  However, there are no factual allegations connecting Saliba to the commissioners or any other defendant.  For instance, there are no allegations Saliba regularly works with the ODOT commissioners, Hill, Ridley or Evans or that he speaks with one or more of them with any regularity.  It does not allege he has ever worked in proximity to them.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  If it were reasonable to assume Saliba worked in concert with these defendants, it would also be reasonable to assume

any employee from any of the twenty-seven Central Office Divisions (*see* http://www.okladot.state.ok.us/hqdiv/indexg.htm) or any of the eight field divisions from across the state (*see* http://www.okladot.state.ok.us/flddiv.htm) also worked in concert with them.  Such an assumption strains credulity.

Even assuming the complaint alleges a plausible connection between Saliba and these defendants, it fails to allege any level of temporal proximity between Saliba's alleged policy against Glover and Glover's public speech.  While it is safe to assume the two contract disputes occurred after the public fight over Highway 64, we have no indication of whether Saliba's actions took place within days, weeks, or even years of Glover's public statements.  The complaint provides nothing which actually ties the Highway 64 comments and Saliba's actions together except the categorical statement that Saliba "took [his] course of action in retaliation for [Glover] seeking redress in court and because Glover published [derogatory comments on Highway 64]."  (R. Vol. I at 28.)  In sum, as the complaint is worded, it contains no allegation of a connection between Saliba's work and the commissioners or even an explanation of how Saliba's decisions related to Glover's public comments.  The facts – two alleged contract disputes – do not rule out the possibility of retaliatory motive, "and thus at some level they are consistent with a viable First Amendment claim, but mere possibility is not enough."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971-72 (9th Cir. 2009).  Glover fails to "nudge[] [his] claims across the line from conceivable to plausible.  *Twombly*, 550 U.S. at 570.

     3.     George Raymond

Glover alleges Raymond, an ODOT construction engineer and an "executive

officer," is vested with the discretionary power to award contracts and recommend termination of certificates to do business with ODOT. (*Id*. at 20.) Raymond, along with others, allegedly became "actively hostile," and at some unspecified time proposed Glover be suspended from any ODOT contracts. At another unknown point, Raymond allegedly "stated neither Mr. Glover nor any member of his family, would ever get a contract with ODOT in the future." (*Id.* at 28.)

For much the same reasons Glover failed to state a claim against Saliba, his allegations involving Raymond also fail. Most importantly, the complaint contained no allegation Raymond's actions were based on Glover's public criticism of ODOT, instead it alleged Raymond's statements were the result of his frustration with Glover's litigiousness. *See* Section II.D. *infra*. Even inferring a dual motive on Raymond's part, there is no allegation regarding the time frame or the recipient of any "recommendations" made by Raymond. Critically, there is no allegation that Raymond was involved in the report to the Commissioners or took any actions based on his alleged statements. There is no allegation connecting Raymond to Glover's loss of a certificate to do business with ODOT due to his public comments on ODOT's performance. In other words, Glover has failed to allege Raymond was personally involved in any violation of Glover's First Amendment rights. *See Pignanelli*, 540 F.3d at 1219 (injury-in-fact must be fairly traceable to the defendants).

4.     The Commissioners, Hill, Ridley and Evans

Glover's complaint asserts ODOT CEO Ridley, ODOT Director Evans, and ODOT general counsel Hill prepared a report which recommended Glover be designated

- 18 -

an "irresponsible bidder" and suspended from obtaining future work with ODOT because of Glover's comments to the media regarding the Highway 64 project. In paragraph 50, Glover alleges "a large portion of the report was concerning an investigation of Highway 64[8] wherein ODOT was being blamed for poor design." (R. Vol. I at 30.) This allegation, while tenuous, connects Glover's statements to the media during the Highway 64 dispute to Ridley, Evans and Hill's motivation to recommend Glover's debarment in an official report. Paragraph 53 alleges the ODOT Commissioners unanimously adopted this report even though "it listed lawfully protected acts" as a basis for suspension. (R. Vol. I at 29.) Although we do not know precisely what "lawfully protected acts" were listed, we may reasonably infer Glover's public criticism was among them. Thus construed, the complaint alleges Ridley, Evans and Hill authored the report in retaliation for Glover's speech and the Commissioners, knowing the retaliatory basis for the recommendation, approved the recommendation and suspended Glover from working for ODOT. These allegations are sufficient to state a claim for retaliation in violation of Glover's First Amendment right to freedom of speech.

D.      Count II – Retaliation for Petitions for Redress

Paragraph 47 of the complaint alleges the report specifically referred to Glover's

---

[8] The complaint does not say whether the "investigation of Highway 64" alleged in this paragraph is part of Nicholson's allegedly unlawful investigation referenced in other paragraphs. To the contrary, the complaint alleges Nicholson's "unlawful" investigation had "no rational nexus between . . . [Glover] and his relationship with ODOT," was "unrelated to ODOT," and was "completely unrelated to any ODOT endeavor." (R. Vol. I at 26-27.) Because Nicholson's investigatory activities were allegedly unrelated to ODOT, we must conclude the investigation referred to in the report is not the Nicholson investigation.

prior judicial and administrative challenges (Glover's petitions for redress) as "a primary factor" for its recommendation Glover be disqualified from bidding. (R. Vol. I at 29.) As discussed above, the allegations regarding the report sufficiently state a constitutional claim if the speech on which the claim is based is protected. The question is whether Glover must allege its petitions for redress involved a matter of public concern in order to state a claim for relief.

In *Van Deelen v. Johnson*, we reversed the district court's dismissal of a private citizen's § 1983 claim alleging county authorities retaliated against him for filing a lawsuit and eight tax appeals. 497 F.3d 1151, 1153 (10th Cir. 2007). We rejected the district court's conclusion that a private citizen's petitions must involve a matter of public concern and stated:

> This is, of course, not to say that the "public concern" test proffered by defendants and adopted by the district court has no place in the law of the First Amendment. Rather, the test quite properly applies to claims brought by government employees -- but its scope reaches no further.

*Id.* at 1156. Arguably, this statement absolves Glover from having to plead its petitions involved a matter of public concern as it is not a public employee. However, a public *contractor's* claim based on its right to petition was not at issue in *Van Deelen.*

Neither this Circuit nor the Supreme Court has directly addressed whether a public contractor's petitions must involve a matter of public concern in order to qualify as protected speech. The two circuits which have published cases on the issue, the Sixth and Eighth, reached opposite conclusions.

In *Gable v. Lewis*, a female operator of an automobile towing company brought a

§ 1983 action against the Ohio Highway Patrol. 201 F.3d 769, 770 (6th Cir. 2000). She

alleged the Patrol removed her from a towing referral list in retaliation for her lawsuit

claiming sex-based discrimination in the Patrol's allocation of towing business. The

Patrol argued the petition clause was inapplicable because the operator's discrimination

complaint was personal, not "a matter of 'public concern.'" *Id.* The court disagreed.

The Sixth Circuit began its analysis by stating, "[t]he petition clause is analytically

distinct from, although related to, the free speech clause." *Id.* at 771. It looked to the

Supreme Court's decision in *California Motor Transp. v. Trucking Unlimited*, 404 U.S.

508, 510-11 (1972), as authority supporting the protection of personal interests under the

First Amendment right to petition.[9] The court then examined the justifications for

limiting public employees' speech and found "the reason for the 'public concern' test . . .

[did] not apply . . . because the plaintiff was not a governmental employee subject to the

discipline of a governmental employer." *Id.* Rather, "[s]he was simply a citizen offering

services to a state agency." *Id.* It noted "no authority in the Sixth Circuit limit[ed]

petitioning activity by public employees to matters of 'public concern' either generally or

in the governmental employment context." *Id.* at 771-72. Based on this reasoning, the

---

[9] In *California Motor Transp.*, the Supreme Court reversed the dismissal of a civil
suit between two trucking companies brought under § 4 of the Clayton Act. The plaintiff
alleged the defendant had "conspired to monopolize trade and commerce in the
transportation of goods . . . [by instituting] state and federal proceedings to resist and
defeat applications by respondents to acquire operating rights or to transfer or register
those rights." 404 U.S. at 509. The Court stated "it would be destructive of rights of
association and of petition" to allow a defendant to prevent a plaintiff's access to state
and federal agencies and courts "respecting resolution of their business and economic
interests." *Id.* at 510-11.

- 21 -

court held "there is no basis in our First Amendment jurisprudence for applying [the] public concern test to petitioning activity by a private business woman who is simply supplying services to a governmental agency as an independent contractor."  *Id.* at 772.

In *Heritage Constructors, Inc. v. City of Greenwood, Ark.*, the Eighth Circuit applied a different analysis.  545 F.3d 599 (8th Cir. 2008).  There, a public contractor claimed the City declared it was no longer a "responsible bidder" in retaliation for its prior arbitration claim against the city.  *Id.* at 600.  The Eighth Circuit did not rely on *California Motor Transp.*, but instead looked to *Board of County Comm'rs v. Umbehr.*[10] *Id.* at 601.  The court found instructive *Umbehr's* companion opinion, *O'Hare Truck Serv. Inc. v. City of Northlake*, 518 U.S. 712, 715 (1996), which applied the *Umbehr* rule to "a regular provider of services."  *Id.*  In *O'Hare* the contractor claimed he was "removed from an official list of contractors authorized to perform public services" because he supported the mayor's opponent.  *Id.* at 714-16.  Because the injury in *O'Hare* was identical to Heritage's claim – removal from a list of authorized construction contractors – the court concluded, "[o]n these facts, Heritage cannot be distinguished from the service provider in *O'Hare*."  *Heritage*, 545 F.3d at 602.

The Eighth Circuit, unlike the Sixth Circuit, has held, "a public employee's right-to-petition claim must involve a matter of public concern, just as a freedom-of-speech

---

[10] The *Heritage* court acknowledged the "*Umbehr* opinion discusses only independent contractors whose contracts have been terminated.  It specifically does not address 'bidders or applicants for new government contracts who cannot rely on such a [pre-existing commercial] relationship [with the government].'"  545 F.3d at 601 (quoting *Umbehr*, 518 U.S. at 685).

claim must." *Id.* The court concluded "[t]he *Umbehr* and *O'Hare* cases hold . . . the same framework and analysis apply to government contractors as to government employees." *Id.* at 602. Because Heritage did not allege its petition was a matter of public concern, the court affirmed the district court's grant of summary judgment to the defendants. *Id.* at 603.

We find the Eighth Circuit's analysis compatible with our precedent. In this Circuit, a public employee's right to petition for redress of grievances is analyzed no differently than a public employee's right to free speech. *See Schalk v. Gallemore*, 906 F.2d 491, 498 (10th Cir. 1990) ("In the instant case, [the public employee's] right to petition is inseparable from her right to speak. As such, we see no reason to subject this claim to a different sort of analysis."). A public employee's claim for retaliation based on his right to petition must state the petition involved a matter of public concern. *Martin v. City of Del City,* 179 F.3d 882, 887-89 (10th Cir. 1999) (involving the alleged retaliation for a municipal grievance appeal). We have determined "that a public employee plaintiff who has 'petitioned' is in no better position than one who has merely exercised free speech." *Id.* at 889 (quotations omitted). Given this precedent and *Umbehr's* counsel that we apply the public concern requirement to a public contractor's speech, 518 U.S. at 674, we hold the public concern requirement applies equally to a public contractor's retaliation claim based on the right to petition. Glover alleges only private contract disputes with ODOT based on the terms of its contracts. Because it alleges nothing which may elevate the issues to a matter of public concern it has failed to

state a claim on which relief may be granted.

E.      Count III – Retaliation for Exercising Due Process

The Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 2. Glover does not allege it did not receive due process.  Rather, it alleges ODOT removed its prequalified bidder status in retaliation for the exercise of its due process rights. **[Appellee's Br. at 28.]**

Glover argues it need not plead a property or liberty interest because its due process claim is similar to its First Amendment claim which does not require such interest.  We disagree.  To the extent Glover argues retaliation for his *past* petitions for redress, this is simply an attempt to dress First Amendment claims in Fourteenth Amendment garb.  We have already addressed the First Amendment claim in its proper context and will not accept the invitation to do the same again in this proposed context. To the extent he is claiming a due process violation in the debarment proceedings, our case law makes clear "[i]n order to make out a claim for a violation of due process, a claimant must have a liberty or property interest in the outcome of the proceedings." *Arumbala-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009).

There is no protected property or liberty interest when the outcome of the process is within the government official's complete discretion.  *See Nichols v. Bd. Of County Comm'rs of the Cty. of La Plata, Colo.*, 506 F.3d 962, 970 (10th Cir. 2007) (property interest); *Cardoso v. Calbone*, 490 F.3d 1194, 1198 (10th Cir. 2007) (liberty interest). Oklahoma law clearly states the prequalified bidder determination is subject to the

- 24 -

Commission's sole discretion.  *See* OKLA. STAT. ANN. tit. 61, § 118 ("The Commission . . . shall be the sole judge of the qualifications of prospective bidders and shall ascertain, to their exclusive satisfaction, the qualifications of each prequalified bidder.").

Glover states, "[i]f there must be a property interest, then Defendants' contention that Glover did not have a property interest is just incorrect . . . . [T]he Oklahoma Supreme Court has determined that a contractor who has or should have been accepted as the lowest responsible bidder has a property interest."  (Appellee's Brief at 29 (citing *Rollings Constr., Inc. v. Tulsa Metro. Water Auth.*, 745 P.2d 1176, 1179 (Okla. 1987).) *Rollings* is inapposite.

In *Rollings*, a contractor filed suit because the second lowest bidder was awarded a contract.  In fact, the Oklahoma Supreme Court held "Rollings had no property rights in Contract 5 until such time as it was or should have been determined to have been the lowest responsible bidder by the Board of Trustees of the Water Authority, and that event did not occur."  *Id.*  We are not considering ODOT's activities under its contracts or an award of a contract to a higher bidder.  Glover's claims concern the removal of the prequalified status.  While the revocation or removal of a license or certificate "essential in the pursuit of a livelihood requires procedural due process under the Fourteenth Amendment, *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1150 (10th Cir. 2001) (quotations omitted), Oklahoma law clearly states prequalification to bid on contracts "does not constitute a license."  Okla. Stat. Ann. tit. 61, § 118.  Consequently, Glover fails to allege a viable due process claim against any defendant.

- 25 -

F.      Count IV - Equal Protection

The Fourteenth Amendment also states "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 2. The complaint alleges the "defendants singled out [Glover] for disparate treatment from others similarly situated for no rational reason . . . [other than] their personal animosity against [Glover]" in violation of the Fourteenth Amendment's guaranty of equal protection. (R. Vol. I at 32.) Glover brings this claim under a class-of-one theory.

"[E]qual protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others." *Engquist v. Oregon Dept. of Agric.*, 128 S. Ct. 2146, 2152 (2008) (quotations omitted). However, the Supreme Court has recognized "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called "class of one." *Id.* Glover relies on *Village of Willowbrook v. Olech*, where a private citizen claimed the village retaliated against her for bringing an earlier lawsuit. 528 U.S. 562, 563 (2000). Following her lawsuit, the village required her to grant an easement on her property more than double what it required of her neighbors in order to connect her water supply. The Court held her complaint stated a valid claim under the Equal Protection Clause because it alleged she had "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564.

Recently the Supreme Court refused to recognize a "class of one" equal protection claim in the public employee context. In *Engquist,* a public employee brought a "'class-

- 26 -

of-one' equal protection claim alleging she was fired, not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for 'arbitrary, vindictive, and malicious reasons.'" 128 S. Ct. at 1249. The Court reasoned the *Pickering* analysis, as well as other Supreme Court cases distinguishing the scope of a public employee's right to bring a claim against a government employer, applied equally to Engquist's claim. *Id.* at 2151-52. It found the "significant" circumstance" in *Olech* was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id.* at 2153. Unlike *Olech*, however, the government's role as employer "involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.* at 1254. Because "an allegation of arbitrary differential treatment" could likely be made in every instance of a personnel decision by the government, the Court concluded "the class-of-one theory of equal protection has no application in the public employment context." *Id.* at 2156.

We have applied *Engquist* to public employees' equal protection claims. *See Pignanelli,* 540 F.3d at 1220; s*ee also Kelley v. City of Albuquerque*, 542 F.3d 802, 822 (10th Cir. 2008). While we have not considered *Enquist* in the public contractor context, at least one court has applied it to reject such a claim. *See Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th Cir. 2008). We need not decide this issue today. Glover's class-of-one claim fails for an independent reason.

Glover has failed to allege, as it must, the identity or characteristics of other similarly situated contractors and how those similarly situated contractors were treated

differently.  *See Robbins*, 519 F.3d at 1253 (allegations give "no explanation of the characteristics of [those] similarly situated and how they were allegedly treated differently").  Unlike the plaintiff in *Olech*, who alleged specific property owners received more favorable treatment, Glover does not identify any contractor who was treated differently.  The complaint contains no instance where Saliba granted similar requests made by other contractors, no similar circumstances where another contractor was not investigated, and no specific action taken by top executives that would not have been taken by supervisors.  Nor does it identify a single similarly-situated contractor which did not lose its prequalification status after numerous legal challenges or statements to the media.  Without additional information, Glover's class-of-one equal protection claim fails to state a claim as to any defendant.

G.    Qualified Immunity

The Supreme Court has clearly stated that the speech of "independent contractors [is] protected, and the *Pickering* balancing test, adjusted to weigh the government's interests as contractor rather than as employer, determines the extent of [the] protection." *Umbehr*, 518 U.S. at 673; s*ee also Worrell v. Henry*, 219 F.3d 1197, 1205 (10th Cir. 2000) ("the government may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech even if he has no entitlement to that benefit" (quoting *Umbehr*)).  Glover alleged the report, the recommendation and the Board's adoption of the recommendation were in retaliation for its protected speech.  As the cases above indicate, freedom from retaliation for protected activity was clearly established when the defendants acted and they are not entitled to qualified immunity.

- 28 -

### III.    CONCLUSION

Count I sufficiently alleges the individual ODOT Commissioners, and ODOT employees Hill, Ridley and Evans wrote or adopted a recommendation that Glover be denied its prequalified bidder status in retaliation for its public criticisms of the Highway 64 design in violation of the First Amendment.  Glover's constitutional protection was clearly established at the time these individual defendants engaged in the alleged retaliation.  The district court's denial of these defendants' motion to dismiss and claim of qualified immunity is **AFFIRMED**.  The remaining allegations in the Glover's complaint fail to state a claim for which relief may be granted against any defendant. [11] The district court's denial of all the ODOT defendants' motion to dismiss as to Count II, Count III and Count IV is **REVERSED**.  We **REMAND** for further proceedings consistent with this order.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[11] Glover asked the district court for the opportunity to amend its pleadings if they were insufficient.  The district court never addressed this request because it decided the issues in Glover's favor.  Glover raised the amendment issue again in its response brief to "preserve this request before this Court."  (Appellee's Response Br. at 15.)  Because we generally "do[] not consider an issue not passed upon below," the district court can "address the matter and decide whether to grant leave to amend" in the first instance. *Anderson v. Blake*, 469 F.3d 910, 918 (10th Cir. 2006) (quotations omitted).  It will, no doubt, give the matter due consideration on remand.

- 29 -