MATHESON, Circuit Judge.
Paul E. Knopf, the former Director of the Planning and Development Department ("City Planner") in Evanston, Wyoming ("City"), sued Mayor Kent Williams under 42 U.S.C. § 1983. Mr. Knopf alleged that Mayor Williams retaliated against him for exercising his First Amendment rights. He claimed Mayor Williams did not reappoint him to his position as City Planner because he had sent an email to the City Attorney raising concerns about impropriety relating to a City project.
In federal district court, Mayor Williams moved for summary judgment based on qualified immunity, which the court denied. In this interlocutory appeal, he asks us to reverse the district court's denial. This court has jurisdiction under 28 U.S.C. § 1291.
Because this opinion and Judge Briscoe's concurrence conclude that Mr. Knopf has failed to show a violation of clearly established federal law on an essential element of his claim, this court reverses the district court's denial of qualified immunity to Mayor Williams.
I. BACKGROUND
A. Factual History
1. Mr. Knopf's Position as City Planner
Mr. Knopf began working for the City in 1985 in the Planning and Development Department ("Department"). He was appointed to the position of City Planner in 1987. His job as City Planner included the following responsibilities:
1. Managing the Department, which consisted of the associate city planner and an administrative assistant.
2. Addressing citizen inquiries concerning fencing and building permits and responding to development requests.
3. Preparing for planning and zoning commission meetings and hearings.
4. Preparing conditional-use permit reports, variances, zone changes, and amendments for planning commission consideration.
5. Collaborate in crafting site plans for various city projects.[1]
*942 6. Representing the Department to other City departments in explaining its programs and in resolving sensitive, significant, and controversial issues.
7. Coordinating activities with other departments and outside agencies and organizations.
8. Ensuring compliance with codes and regulations related to planning and development matters.[2]
2. Mr. Knopf's Involvement in the Bear River Project
One of the Department's projects was the Bear River Project ("Project"), which aimed to develop a public greenway along the Bear River over a series of phases laid out in the BEAR Project Master Plan ("Master Plan"). In 1983, before Mr. Knopf's arrival, the Department identified various locations for development, including the area along the Bear River. In 1987, after joining the Department, Mr. Knopf began to develop the Master Plan, planning out the Project's sub-projects (or "phases"). The Project's main goals were to establish and maintain a public greenway for recreation, water conservation, flood control, reclamation, rehabilitation, and wildlife resources preservation.
As part of the Project, Mr. Knopf started a citizens committee that would provide input about the greenway's development. The committee eventually incorporated as the nonprofit BEAR Project, Inc. ("Non-Profit"), and played a major role in planning and executing the Project even though the Non-Profit was unaffiliated with the City. The Non-Profit worked on the Master Plan with Mr. Knopf, raised money, sought private and public partners, oversaw the Project's execution, and coordinated the stakeholders.
The Project involved many phases and many participants over three decades. In addition to the Department and the Non-Profit, private groups-including a private engineering firm and its contractors and sub-contractors-and other City department employees-including the Parks and Recreation Director and the City Engineer-have participated in planning and executing the Master Plan.
Although the Project involved multiple phases of development, only one is at issue here-the Meadows Project. Mr. Knopf and his Department's role in the Meadows Project differed from the other phases, such as the Bear Paw Trailhead Project and the Greenway Entryway Project, which preceded the Meadows Project. The Non-Profit coordinated the parties in these three phases, reporting to the City with any issues or concerns. The Department was involved in the planning of all three phases, developing the site plan, attending meetings with other parties, and advising them about the three phases' place in the overall Master Plan.
Mr. Knopf, as the department head, also acted as the point person between the City and the private groups (i.e. the Non-Profit and the private engineering firm), but only for the first two phases-not for the Meadows Project. The Department facilitated communication between the parties and coordinated project reviews, payments, and orders, passing them along to the City, for the first two projects. But for the Meadows Project, Brian Honey, the City Engineer, was the point person.
3. Mr. Knopf's Email Concerning the Meadows Project and his Dismissal
Disagreement arose over the Meadows Project in October 2015. T-Bar, a subcontractor *943 for irrigation, topsoil, and sod, requested $22,300 more than the originally budgeted amount for topsoil. The private engineering firm's project engineer, Brent Sanders, recommended denying T-Bar's request because he believed T-Bar performed substandard work and had improperly calculated its costs. But Mr. Honey, the City Engineer and the City's point person on the Meadows Project, recommended fulfilling T-Bar's request. Mr. Sanders became increasingly concerned about possible collusion among Mr. Honey, Mayor Williams, and City Councilman Tom Welling, whose brother-in-law owned T-Bar.
Mr. Knopf learned of the dispute from Mr. Sanders and from a public City Council meeting. On October 7, 2015, Mr. Knopf emailed the City Attorney, Dennis Boal, with his concerns. He believed that Mr. Honey's friendship with the owner of T-Bar was "clouding [Mr. Honey's] better judgment." ROA, Vol. I at 15. Further, he stated that Mr. Honey was impeding Mr. Sanders's ability to perform his duties as the project engineer. Mr. Knopf did not receive a response from Mr. Boal.
On December 11, 2015, Mayor Williams met with Mr. Knopf. Mr. Knopf expressed his concerns about Mr. Honey and the Meadows Project and told the Mayor about his October 7 email to Mr. Boal. On January 4, 2016, Mayor Williams again met with Mr. Knopf and informed Mr. Knopf that he would not be reappointing him as City Planner. Mayor Williams said Mr. Knopf's email to the City Attorney was unacceptable and that he had lost confidence and trust in him.
B. Procedural History
Mr. Knopf filed a complaint in Wyoming state court against Mayor Williams in his individual and official capacities. It alleged a First Amendment retaliation claim under 42 U.S.C. § 1983.[3] Mayor Williams removed the case to the United States District Court for the District of Wyoming. He moved for summary judgment based on qualified immunity because (1) Mr. Knopf had failed to prove a violation of a constitutional right, and (2) the law was not clearly established at the time of Mr. Knopf's dismissal.
The district court denied Mayor Williams summary judgment on Mr. Knopf's First Amendment retaliation claim. It determined that Mr. Knopf had sufficiently alleged facts that if proven would constitute a First Amendment violation and that Mayor Williams's conduct violated clearly established law. On clearly established law, the court said that, "since at least 1998, it is clearly established that a public employer cannot retaliate against an employee for exercising their First Amendment right to free speech." Dist. Ct. Op. 17.
II. DISCUSSION
A. Legal Background
1. 42 U.S.C. § 1983 and Qualified Immunity
Under 42 U.S.C. § 1983, a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from *944 damages actions unless their conduct was unreasonable in light of clearly established law." Estate of Booker v. Gomez , 745 F.3d 405, 411 (10th Cir. 2014) (citation, ellipsis, and quotations omitted).
"Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." Gutierrez v. Cobos , 841 F.3d 895, 900 (10th Cir. 2016) (quotations omitted). "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." Carabajal v. City of Cheyenne , 847 F.3d 1203, 1208 (10th Cir. 2017).
"A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." T.D. v. Patton , 868 F.3d 1209, 1220 (10th Cir. 2017). To be clearly established, " 'existing precedent must have placed the statutory or constitutional question beyond debate.' " White v. Pauly , --- U.S. ----, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (quoting Mullenix v. Luna , --- U.S. ----, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) ). Although there need not be a " 'case directly on point,' " id. (quoting Mullenix , 136 S.Ct. at 308 ), "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it....' " City & Cty. of San Francisco v. Sheehan , --- U.S. ----, 135 S.Ct. 1765, 1774, 191 L.Ed.2d 856 (2015) (brackets omitted) (quoting Plumhoff v. Rickard , --- U.S. ----, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) ).
Courts must not define "clearly established law at a high level of generality." Ashcroft v. al-Kidd , 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Instead, "the clearly established law must be 'particularized' to the facts of the case." White , 137 S.Ct. at 552 (quoting Anderson v. Creighton , 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ). "The dispositive question is whether the violative nature of particular conduct is clearly established." Mullenix , 136 S.Ct. at 308. (quotations omitted). "Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.' " White , 137 S.Ct. at 552 (brackets and ellipsis omitted) (quoting Anderson , 483 U.S. at 639, 107 S.Ct. 3034 ).
2. First Amendment Retaliation
"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos , 547 U.S. 410, 417, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (emphasis added). Rather, "the First Amendment protects a public employee's right ... to speak as a citizen addressing matters of public concern." Id. The government employer, however, also has a "countervailing interest in controlling the operation of its workplaces." Lane v. Franks , --- U.S. ----, 134 S.Ct. 2369, 2377, 189 L.Ed.2d 312 (2014). "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205 , 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).
*945 In striking this balance, the First Amendment prohibits public employers from taking adverse action against employees because of their protected speech. To determine if an employer's adverse employment action against an employee is an impermissible retaliation under the First Amendment, we apply the Garcetti / Pickering test. Trant v. Oklahoma , 754 F.3d 1158, 1165 (10th Cir. 2014) ; see Garcetti , 547 U.S. at 421, 126 S.Ct. 1951 ; Pickering , 391 U.S. at 568, 88 S.Ct. 1731.[4] The test consists of five elements:
(1) whether the speech was made pursuant to an employee's official duties;
(2) whether the speech was on a matter of public concern;
(3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;
(4) whether the protected speech was a motivating factor in the adverse employment action; and
(5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.
Trant , 754 F.3d at 1165 (paragraph breaks added). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." Id. To prevail, a plaintiff must establish all five elements. See Brammer-Hoelter v. Twin Peaks Charter Acad ., 492 F.3d 1192, 1202-03 (10th Cir. 2007).
Although the parties dispute four of the five elements, this opinion focuses on the first element to resolve this case. "If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." Couch v. Bd. of Trs. of Mem'l Hosp. , 587 F.3d 1223, 1235 (10th Cir. 2009) (quotations omitted).
We have "taken a broad view of the meaning of speech that is pursuant to an employee's official duties." Chavez-Rodriguez v. City of Santa Fe , 596 F.3d 708, 713 (10th Cir. 2010) (quotations omitted). "The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Lane , 134 S.Ct. at 2379. If the speech involves "the type of activities that [the employee] was paid to do," then it falls within the scope of an employee's duties. Green v. Bd. of Cty. Comm'rs , 472 F.3d 794, 800-01 (10th Cir. 2007).
"There are no bright line rules" in making this determination. Chavez-Rodriguez , 596 F.3d at 713. Many facts may be relevant-the tasks in an employee's job description, the frequency with which an employee performs a task, the subject matter of the employee's speech, the recipient of the employee's speech, the legal obligation for the employee to speak-but no one fact is determinative. See Brammer-Hoelter , 492 F.3d at 1203 ; (job description is not dispositive) Holub v. Gdowski , 802 F.3d 1149, 1156 (10th Cir. 2015), cert. denied , *946 --- U.S. ----, 136 S.Ct. 1209, 194 L.Ed. 2d 184 (2016) (frequency of performance is not dispositive); Lane , 134 S.Ct. at 2379 (speech made about work is not dispositive); Rohrbough v. Univ. of Colorado Hosp. Auth ., 596 F.3d 741, 747 (10th Cir. 2010) (speech made outside chain of command is not dispositive).
We must "take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." Brammer-Hoelter , 492 F.3d at 1204. Ultimately, we ask whether the employee was "perform[ing] the task[ ] [they were] paid to perform" when they spoke. Lane , 134 S.Ct. at 2379. If so, the "speech was therefore commissioned by his employer," Thomas v. City of Blanchard , 548 F.3d 1317, 1323 (10th Cir. 2008), and it enjoys no First Amendment protection.
B. Standard of Review
"We review summary judgment de novo, applying the same legal standard as the district court." Gutierrez , 841 F.3d at 900. A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party"-here, Mr. Knopf. See Gutierrez , 841 F.3d at 900.
"When the defendant has moved for summary judgment based on qualified immunity, we still view the facts in the light most favorable to the non-moving party and resolve all factual disputes and reasonable inferences in its favor." Henderson v. Glanz , 813 F.3d 938, 952 (10th Cir. 2015). "Unlike most affirmative defenses, however, the plaintiff would bear the ultimate burden of persuasion at trial to overcome qualified immunity by showing a violation of clearly established federal law." Id. "Thus, at summary judgment, we must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." Id.
"We may, at our discretion, consider the two parts of this test in the sequence we deem best in light of the circumstances in the particular case at hand." Bowling v. Rector , 584 F.3d 956, 963 (10th Cir. 2009) (quotations omitted).
C. Analysis
The following considers only the second requirement to overcome qualified immunity-whether the law was clearly established-and determines the district court erred in denying Mayor Williams summary judgment. Mr. Knopf did not meet his burden of showing that any violation of the First Amendment he may have suffered was based on clearly established law.
1. General Statements of Law Not Sufficient
The district court's discussion of the second qualified immunity prong consisted only of the general statement that "it is clearly established that a public employer cannot retaliate against an employee for exercising their First Amendment right to free speech." Dist. Ct. Op. at 17. Mr. Knopf relies on the district court's statement and similarly argues that at the time of his dismissal, it was clearly established that a public employer cannot retaliate against an employee for speaking on matters of public concern. See Aplee. Br. at 26. But these are general statements of law. As the Supreme Court has cautioned, we must not "define clearly established law at a high level of generality." al-Kidd , 563 U.S. at 742, 131 S.Ct. 2074. These statements *947 merely repeat the generic Garcetti / Pickering standard- "the First Amendment protects a public employee's right ... to speak as a citizen addressing matters of public concern." Garcetti , 547 U.S. at 417, 126 S.Ct. 1951. Instead, for Mr. Knopf to meet his burden, "the clearly established law must be particularized to the facts of the case." White , 137 S.Ct. at 552 (quotations omitted).
2. Mr. Knopf's Four Cases Not Sufficient
Mr. Knopf's reliance on the four cases cited in his brief for clearly established law is misplaced. Two those cases- Conaway v. Smith , 853 F.2d 789 (10th Cir. 1988) and Lytle v. City of Haysville , 138 F.3d 857 (10th Cir. 1998) -were decided before the Supreme Court decided Garcetti in 2006, which added the scope-of-official-duties element to the Garcetti / Pickering test. See Garcetti , 547 U.S. at 421, 126 S.Ct. 1951 ; see also Leverington v. City of Colorado Springs , 643 F.3d 719, 724 (10th Cir. 2011) (explaining that Garcetti "expanded on the Pickering test by adding a fifth, threshold inquiry that seeks to determine whether the speech at issue was made pursuant to the public employee's official duties"). Conaway and Lytle therefore provide little guidance on the official duties issue, much less clearly established law.
Mr. Knopf cannot rely on his third case, Glover v. Mabrey , 384 Fed.Appx. 763 (10th Cir. 2010) (unpublished), because unpublished decisions "provide little support for the notion that the law is clearly established." Mecham v. Frazier , 500 F.3d 1200, 1206 (10th Cir. 2007) ; see also Medina v. City and Cty. of Denver , 960 F.2d 1493, 1498-99 (10th Cir. 1992) ("The appellant cites to one unpublished ruling in the United States District Court for the District of Colorado, but because that ruling was unpublished the appellant cannot rely on it to prove the clearly established law in this jurisdiction."); Green v. Post , 574 F.3d 1294, 1306 n. 10 (10th Cir. 2009) (citing Medina , 960 F.2d at 1498-99 approvingly).[5]
His fourth case, Helget v. City of Hays , 844 F.3d 1216 (10th Cir. 2017), does not help either because it was decided more than a year after the events occurred in this case. See Patel v. Hall , 849 F.3d 970, 980 (10th Cir. 2017) ("A right is clearly established if, at the time of the conduct, existing precedent has placed the statutory or constitutional question beyond debate." (quotations omitted) ).[6]
*948 3. Dill Not Sufficient
Mr. Knopf does not discuss the only case the district court cited to support its clearly established law ruling- Dill v. City of Edmond , 155 F.3d 1193 (10th Cir. 1998). In that case, police detective Dennis Dill told his supervisors he doubted the guilt of a murder investigation suspect and wrote in a letter to his police chief that he was aware of exculpatory evidence. Id. at 1200-01. His supervisors thought otherwise about the suspect's guilt. They transferred Mr. Dill to a different division and changed his shifts. Id.
The district court dismissed Mr. Dill's claim for First Amendment retaliation, ruling he had failed to state a claim. This court reversed, holding his statements addressed a matter of public concern and that the City had failed to show its interests outweighed his speech interests, the second and third elements of the Garcetti / Pickering test. Id. at 1202-03.
Dill does not supply Mr. Knopf with clearly established law to overcome Mayor Williams's qualified immunity defense.
First, Dill preceded the 2006 decision in Garcetti , which added the restrictive element of "whether the speech was pursuant to official duties" to the test for a First Amendment retaliation claim. See Leverington , 643 F.3d at 724. The Dill opinion listed the elements required then for a retaliation claim. 155 F.3d at 1201. The "official duties" element of Garcetti / Pickering was not one of them. Dill therefore cannot provide clearly established law on whether Mr. Knopf's speech fell within the scope of his official duties because there was no such element when Dill was decided.
Second, the Supreme Court's Garcetti decision shows why Dill does not provide Mr. Knopf clearly established law. The Court considered whether adverse employment action against a deputy district attorney for statements to his supervisors that criticized the adequacy of a search warrant affidavit was a First Amendment retaliation violation. It held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421, 126 S.Ct. 1951.
Four justices dissented. Justice Stevens, asserting it "is quite wrong" that "there is a categorical difference between speaking as a citizen and speaking in the course of one's employment," called the majority's rule "new," "novel," and "perverse." Id. at 427, 126 S.Ct. 1951. Justice Souter said the majority chose "an odd place to draw a distinction." Id. at 430, 126 S.Ct. 1951. Justice Breyer described the majority's test as "too absolute." Id. at 446, 126 S.Ct. 1951.
For our purposes, the contrasting views in Garcetti confirm there was no clearly established law dividing official speech from citizen speech when Dill was decided.
Third, although Dill may be interpreted as implicitly recognizing that Mr. Dill's speech was not part of his official duties, the court was not squarely presented with that issue. As mentioned above, there was no "official duties" element at that time. Moreover, we recognized that "Defendants' motion to dismiss focused solely on whether Plaintiff's speech involved a matter of public concern." Id. at 1203. And Dill did not analyze whether the detective's statements fell within his responsibilities. A reasonable official in Mayor Williams's position could hardly understand Dill as providing clear guidance on *949 whether Mr. Knopf's speech exceeded his official duties when this court in Dill said the only issue before it was whether Mr. Dill's speech was a matter of public concern.
Fourth, although Dill may bear some factual similarity to this case-e.g., Mr. Dill had worked on the criminal investigation for five weeks before it was referred to a multi-district task force, id. at 1200 -it also varies factually. For one thing, Mr. Knopf had worked on the Project for almost 30 years, including development of the master plan and coordination with multiple stakeholders in his role as City Planner. And unlike Mr. Dill, who served as a rank-and-file detective without supervisory responsibilities, Mr. Knopf's job as City Planner tasked him with a broad oversight role for matters like the Bear River Project.
Fifth, perhaps Mr. Knopf could argue, though he has not here, that under Garcetti / Pickering , the Dill court would have decided that Mr. Dill spoke to his supervisors and police chief as a private citizen and not as part of his official duties, and therefore his speech was protected. But even if that argument may have merit, so would the argument that, as a detective having worked on the case, Mr. Dill raised his concerns as part of his official duties. It is not certain how the Dill decision would have come out under the "official duties" element of Garcetti / Pickering , or that "the law [here, Dill ,] was sufficiently clear that" a reasonable person in Mayor Williams's position "would understand that what he is doing is unlawful." District of Columbia v. Wesby , --- U.S. ----, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018).
4. Failure to Carry Burden
Though Mr. Knopf need not cite " 'a case directly on point,' " Henderson , 813 F.3d at 953 (quoting Stanton v. Sims , 571 U.S. 3, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) ), he must show the law "would have been clear to a reasonable officer [in Mayor Williams's position] that his conduct was unlawful in the situation." Klen v. City of Loveland , 661 F.3d 498, 511 (10th Cir. 2011) (quotations omitted). The key question is whether Mayor Williams "reasonably [could] have believed, at the time he fired [Mr. Knopf], that a government employer could fire an employee on account of" speech stemming from almost 30 years of high-level involvement with an ongoing project. See Lane , 134 S.Ct. at 2381. Mr. Knopf has not shown that such a belief was unreasonable based on then-existing law. Because it would not have been "beyond debate" to a reasonable official that Mr. Knopf's email exceeded the scope of his official duties, Mullenix , 136 S.Ct. at 308 (quotations omitted), Mayor Williams is entitled to qualified immunity on the particular facts of this case.
Because Mr. Knopf has not "carried [his] burden to show violation of a clearly established constitutional right, the district court erred in denying [Mayor Williams] qualified immunity." See Henderson , 813 F.3d at 953.
5. The Dissent's Theory of Qualified Immunity
The dissent's approach to qualified immunity analysis under the first element of Garcetti / Pickering runs counter to precedent. Instead of "identify[ing] a case where an [official was] acting under similar circumstances," White 137 S.Ct. at 552, the dissent "would apply clearly established general principles derived from Supreme Court precedent-from Lane v. Franks , --- U.S. ----, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014) and Garcetti , 547 U.S. 401, 126 S.Ct. 1951 (2006) -to determine whether the government employee's speech fell outside the scope of his job duties."
*950 Dissent at 957.[7] The dissent fails to cite a Supreme Court or Tenth Circuit case supporting its approach.[8]
The Supreme Court has warned against "defin[ing] clearly established law at a high level of generality." al-Kidd , 563 U.S. at 742, 131 S.Ct. 2074. Clearly established law "must be particularized to the facts of the case," White , 137 S.Ct. at 552 (quotations omitted),[9] but the dissent nonetheless relies on "general principles," Dissent at 957.[10] Moreover, we examine "the entire legal landscape at the time of the [the alleged violation]" to ascertain clearly established law. Wesby , 138 S.Ct. at 593. The dissent's lens, which is limited to Lane and Garcetti , should widen to consider relevant "Supreme Court or Tenth Circuit decision[s], or the weight of authority from *951 other courts" in determining whether clearly established law applies to this case. Patton , 868 F.3d at 1220.[11]
The dissent also suggests, again without precedent, that the first step of Garcetti / Pickering warrants different treatment than other qualified immunity cases because of its focus on the plaintiff-employee's speech as opposed to the defendant-official's conduct. See Dissent at 961-62. But we rarely focus on one party's conduct in qualified immunity analysis. See, e.g., A.M. v. Holmes , 830 F.3d 1123, 1141 (10th Cir. 2016), cert. denied sub nom. A.M. ex rel. F.M. v. Acosta , --- U.S. ----, 137 S.Ct. 2151, 198 L.Ed.2d 221 (2017) (examining the plaintiff-suspect's conduct in determining whether a reasonable defendant-official had probable cause for arrest). The question here, as in other contexts, considers the conduct of both parties: would a reasonable person in Mayor Williams's position have understood Mr. Knopf to have spoken outside his official duties? See Casey v. W. Las Vegas Indep. Sch. Dist ., 473 F.3d 1323, 1333 (10th Cir. 2007).
III. CONCLUSION
Based on the foregoing opinion and Judge Briscoe's concurrence, this court reverses the district court's denial of qualified immunity on Mr. Knopf's First Amendment retaliation claim.

These first five responsibilities are taken from Mr. Knopf's own description of his duties in his deposition testimony.

These last three responsibilities are taken from "Examples of Important and Essential Duties" laid out in the job description for the City Planner.

Mr. Knopf also alleged a Fourteenth Amendment deprivation of property claim. He also had brought both these claims against the City. The district court dismissed his due process claim on summary judgment.

An employee may also bring a First Amendment retaliation claim under an alternative three-part test set forth in Worrell v. Henry , 219 F.3d 1197, 1212 (10th Cir. 2000). The Worrell test applies only when the employee brings the claims against "a defendant who is not the plaintiff's employer and when there is no contractual relationship between them."Id. ; see also Leverington v. City of Colorado Springs , 643 F.3d 719, 729 (10th Cir. 2011) (distinguishing the two tests). Here, Mayor Williams was Mr. Knopf's employer. Thus, the Garcetti /Pickering test applies.

In Morris v. Noe , 672 F.3d 1185 (10th Cir. 2012), we explained that Medina concerned an unpublished district court opinion and did not address whether a district court must ignore unpublished opinions from this court in determining clearly established law. Id. at 1197 n.5.

Further examination of these cases reinforces their shortcomings regarding clearly established law. Three of the cases do not address official duties, the first element of Garcetti /Pickering . See Conaway , 853 F.2d at 795-96 (confining review to the second, third, and fourth elements); Helget , 844 F.3d at 1222 (confining review to third element); Lytle , 138 F.3d at 865 (confining review to third element).
Glover briefly discusses the first Garcetti /Pickering step in a footnote. See 384 Fed.Appx. at 769 n.4. In that case, Paul Glover, a construction company owner, bid to perform construction projects for the Oklahoma Department of Transportation ("ODOT") and secured a contract. Id . at 765-66. After work on the project began, Mr. Glover criticized ODOT's design to the media, stating that it increased costs. Id. at 779. ODOT then threatened to take away his status as a prequalified bidder. Id. at 766. Glover 's facts vary from this case. First, Mr. Glover contacted the media, whereas Mr. Knopf emailed only the City Attorney. Id. at 779. Mr. Knopf's speech was internal; he had not brought the alleged wrongdoing to "the attention of law enforcement or other outside parties." Thomas , 548 F.3d at 1324. Second, Mr. Knopf exercised general oversight responsibilities over the Project and its Master Plan, whereas Mr. Glover's job included no such oversight responsibilities. See Glover , 384 Fed.Appx. at 765-66.

The dissent attempts to distinguish the first Garcetti /Pickering element from the other four: Because "the inquiry at the first step.... present[s] a legal determination [and].... may turn, in part, on legal authorities such as government regulations or job descriptions setting forth the employee's job responsibilities," the first step is "a very different inquiry." Dissent at 962 (citing Helget , 844 F.3d at 1221-22 ). But because the second and third steps are also legal questions, see Trant , 754 F.3d at 1165, and job-specific inquiries, the dissent does not adequately explain why only the first step should be excluded from traditional qualified immunity analysis. The third step, like the first, may turn on government regulations or job descriptions setting forth an employee's job responsibilities. See, e.g. , Helget , 844 F.3d at 1223 (examining plaintiff's job description and role at a law enforcement department when balancing her speech interests against her employer's efficiency interest).

The three out-of-circuit opinions the dissent cites-Anderson v. Valdez , 845 F.3d 580 (5th Cir. 2016), Ricciuti v. Gyzenis , 834 F.3d 162 (2d Cir. 2016), and Carollo v. Boria , 833 F.3d 1322 (11th Cir. 2016) -do not support this approach. First, none singles out the first Garcetti /Pickering element as "not requir[ing] a prior case that clearly establishes" law. Dissent at 958; see, e.g. , Carollo , 833 F.3d at 1334 (also discussing matters of public concern). Second, all three examine Supreme Court and circuit precedent in search of clearly established law beyond the general principles derived from Garcetti and Lane . See Anderson , 845 F.3d at 601 (considering Howell v. Town of Ball , 827 F.3d 515 (5th Cir. 2016) ); Ricciuti , 834 F.3d at 170 (considering "pre-Garcetti case law"); Carollo , 833 F.3d at 1334 (discussing Pickering , 391 U.S. 563, 88 S.Ct. 1731, and Akins v. Fulton Cty., Ga. , 420 F.3d 1293 (11th Cir. 2005) ).

The dissent overstates this opinion's treatment of clearly established law. Although the facts must be "particularized," they need not be "directly on point." al-Kidd , 563 U.S. at 741, 131 S.Ct. 2074. The Supreme Court's decisions in Mullenix and White do not require Mr. Knopf to present a virtually identical "case clearly establishing that a city department head ... would be acting outside the scope of his job duties, analogous to Knopf's employment responsibilities, if he sent an email to ... a co-equal city department head, complaining about the misuse of city money in a development project that the person in Knopf's position was not overseeing." Dissent at 961. But, as discussed above, the four cases Mr. Knopf has presented and the one the district court cited do not provide clearly established law based on a case with sufficiently particularized facts.

Our "sliding scale" approach to qualified immunity in Fourth Amendment excessive force cases comes closest to supporting the dissent's approach, but not nearly close enough. Under that approach, we have stated that "[t]he more obviously egregious the conduct in light of prevailing [Fourth Amendment] constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Casey v. City of Fed. Heights , 509 F.3d 1278, 1284 (10th Cir. 2007). But see Lowe v. Raemisch , 864 F.3d 1205, 1211 (10th Cir. 2017) (stating that "our sliding-scale approach may arguably conflict with recent Supreme Court precedent on qualified immunity"). Here, it is far from obvious that Mr. Knopf's communication at issue occurred outside his official duties. See Concurrence at 954 ("[I]t is a close question" whether "Mr. Knopf's email did not fall within the scope of his official duties as a City employee").

Although we examine the legal landscape, the plaintiff must paint it. See Henderson , 813 F.3d at 952 (the burden for demonstrating clearly established law falls on the plaintiff). This opinion has therefore considered the four cases Mr. Knopf has raised and the one the district court cited.