FILED
United States Court of Appeals
Tenth Circuit

November 3, 2025

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARY JOANNE DEZIEL TIMMINS,

    Plaintiff - Appellant,

v.

ALEX PLOTKIN; KAREN MORGAN;
JEFFREY BAKER; GREEN MOUNTAIN
WATER AND SANITATION DISTRICT,

    Defendants - Appellees.

No. 24-1160

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:22-CV-00754-CNS-SBP)**
_____

Submitted on the briefs:[*]

Joseph A. Murr of Murr Siler Eckels Delaney, P.C., Denver, Colorado, for the Plaintiff - Appellant.

William T. O'Connell, III (Saugat K. Thapa with him on the brief) of Wells, Anderson & Race, LLC, Denver, Colorado, for the Defendants - Appellees
_____

Before **HARTZ**, **TYMKOVICH**, and **FEDERICO**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

_____

Plaintiff Mary Timmins served as general counsel and litigation counsel for a public entity, the Green Mountain Water and Sanitation District (the District) in Colorado, which was governed by a Board of Directors (the Board). In those roles she discovered that some members of the Board were engaging in what she believed to be corrupt and potentially unlawful behavior. She spoke about their conduct openly—at public meetings, to reporters, and to private citizens—and was fired for doing so.

Timmins sued the District and three Board members under 42 U.S.C. § 1983 for First Amendment retaliation. The United States District Court for the District of Colorado dismissed Timmins's First Amendment claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, *see Timmins v. Henderson*, No. 1:22-cv-00754-CNS-NRN, 2023 WL 2390712, at *2 (D. Colo. Mar. 7, 2023), concluding that Timmins was not entitled to First Amendment protection because she spoke pursuant to her official duties as a public employee. *See id.* at 4–5. We disagree with the pursuant-to ruling and reverse the dismissal.

## I.    BACKGROUND

### A.    The *Garcetti/Pickering* Framework

In general, the government may not penalize citizens for what they say. But public employees are subject to some constraints not applicable to private citizens. *See Seifert v. Unified Gov't of Wyandotte Cnty./Kan. City*, 779 F.3d 1141, 1151 (10th Cir. 2015). These constraints are necessary because government employers, like private employers, must be able to exercise a "significant degree of control over their

2

employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

To evaluate whether a public employer violated the First Amendment by retaliating against an employee, we apply a test derived from the Supreme Court's decisions in *Garcetti* and *Pickering v. Board of Education*, 391 U.S. 563 (1968). For the public employee to prevail under this test—widely known as the *Garcetti/Pickering* test—five elements must be established:

> (1) The protected speech was not made pursuant to an employee's official duties.
> (2) The protected speech addressed a matter of public concern.
> (3) The government's interests as an employer did not outweigh the employee's free-speech interests.
> (4)  The protected speech was a motivating factor in the adverse employment action.
> (5)  The defendant would not have made the same employment decision in the absence of the protected speech.

*Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018). The employee has the burden of persuasion on the first four elements; the employer has the burden on the fifth. *See Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014).

The first three elements are typically questions of law to be decided by the court, while the last two are typically factual issues decided by the jury. *See Seifert*, 779 F.3d at 1151. Though the first element is often dispositive, the Supreme Court in *Garcetti* had no occasion to "articulate a comprehensive framework for defining the scope of an employee's duties" because the parties did not dispute that the plaintiff had spoken pursuant to his official duties. *See* 547 U.S. at 424. The Court limited its

guidance to saying that this first element requires a "practical" inquiry, not determined by a formal job description or the like. *Id.* at 424.

In *Lane v. Franks*, however, the Court clarified that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." 573 U.S. 228, 240 (2014).[1] The Court reversed the Eleventh Circuit, which had held that a public employee spoke pursuant to his official duties when he testified in a public corruption trial about information he learned during work. *Id.* at 239–40. The Court explained, "*Garcetti* said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment." *Id.* at 239; *accord Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 529 (2022) (recognizing that *Lane* held that "the fact the speech touched on matters related to public employment was not enough to render it government speech"); *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018).

### B.    Factual Background

Because we are reviewing a dismissal on the pleadings, we must accept all well-pleaded allegations in the complaint as true. *See Leverington v. City of Colorado*

---

[1]The district court did not cite *Lane* in its order dismissing Timmins's amended complaint, *see Timmins*, 2023 WL 2390712, although it had discussed *Lane* when it dismissed the original complaint. *See Timmins v. Henderson*, No. 1:22-cv-00754-CNS-NRN, 2022 WL 17454551, at *6 (D. Colo. Dec. 6, 2022). Timmins cited *Lane* below in her opposition to the defense motion to dismiss her amended complaint, although only regarding the statements she made at public meetings.

*Springs*, 643 F.3d 719, 723 (10th Cir. 2011). Timmins worked for the District from February 2019 to August 2021. She was hired to serve as general counsel and to handle anticipated litigation arising from the District's plan to terminate an intergovernmental agreement with the Big Sky Metropolitan District. As general counsel, she provided legal advice in executive sessions of the Board. As litigation counsel, she was expected to prepare and file pleadings, respond to discovery requests, and meet with the Board to discuss legal issues and strategy.

Timmins mentions many actors in her complaint but only four are relevant to this appeal: Alex Plotkin, Jeffrey Baker, Karen Morgan, and John Henderson. The first three were members of the Board and are referred to here as the Defendants. John Henderson served as a deputy public defender at the time but often communicated with the Defendants.[2]

In April 2019 the Board voted to terminate its intergovernmental agreement with Big Sky. As anticipated, the District was sued by several special districts as well as various developers. It was also sued under the Colorado Open Records Act (CORA) by the Green Tree Metropolitan District, which sought all communications between the Board and Henderson. In preparing to defend the CORA lawsuit, Timmins learned that Henderson was employed by the State and therefore prohibited from providing legal advice to the District under Colo. Rev. Stat. § 21-1-102(3). She

---

[2] Henderson was a defendant below but is not a party to this appeal.

also learned that Plotkin and Baker had routinely used their personal emails to conduct District business and to discuss legal matters with Henderson.

Timmins repeatedly advised the Board during executive sessions that these interactions with Henderson were problematic. She explained that the Defendants were violating Colorado's open meetings law in their communications with Henderson. She asked the Board members to stop using their personal emails for official business. And, given the ongoing litigation, she advised the Board members to preserve all emails on their personal accounts. Timmins warned Plotkin and Baker that they risked waiving the District's attorney-client privilege by discussing the litigation with Henderson and that the District could suffer serious consequences as a result. Timmins also advised the Board that Henderson had a conflict of interest.

Notwithstanding Timmins's advice, Plotkin, Baker, and Morgan regularly met behind closed doors and privately agreed upon and took positions regarding District business and legal matters in consultation with Henderson. The Defendants regularly discussed privileged matters with Henderson and even provided Henderson with copies of Timmins's work product. When they were eventually deposed for the Big Sky litigation, both Plotkin and Baker admitted to destroying their texts and emails with Henderson.

After warning Plotkin and Baker privately to no avail, Timmins alerted the public in three ways: (1) she revealed the Defendant's malfeasance during public meetings; (2) she discussed her concerns with reporters; and (3) she discussed her concerns with private citizens. We need not address whether Timmins spoke pursuant to

6

her official duties at the public meetings because she has not specifically addressed those statements on appeal. We therefore summarize only her statements to the press and to private citizens.

### 1.    *Statements to press*

Timmins alleges that she spoke with two reporters. She told Bob Wooley, a reporter with the *Jeffco Transcript*, that the Defendants had violated Colorado's open meetings law, were acting "against the interests of the District in ongoing litigation," and had "align[ed] themselves with an outside attorney who had a conflict of interest." Aplt. App. at 39. Timmins also spoke to Skyler McKinley, a regular contributor to several television channels. She told him that the Defendants had been "acting against the best interests of the citizens of the District by repeatedly engaging in a pattern of open meetings act violations, and putting the District at grave financial risk by violating Court orders in ongoing litigation, including admitting in depositions [that] they had destroyed public records in violation of a discovery order to produce such records in the litigation." *Id.* at 40. She further told McKinley that the Defendants had been meeting with Henderson outside of public meetings, had signed contracts outside of public meetings, and had attempted to hide costs from the public. Finally, she said that the Defendants thought Timmins owed a duty of loyalty to them personally, not to the District. McKinley shared this information with another reporter who published an article about it in the *Colorado Sun*.

### 2.      *Statements to residents*

Timmins also alleges that she was contacted via telephone or email—outside of public meetings—by at least four residents of Green Mountain. She told them that the Defendants were acting against the interests of the District's residents, explaining that the Defendants violated open meetings laws by meeting with Henderson and signing contracts outside of public meetings. She added that the Defendants were "putting the District at grave financial risk by violating Court orders in ongoing litigation." *Id.*, at 41. And she told residents that the Defendants "failed to appreciate the distinction between their fiduciary duty owed to the District, and their own self-interest." *Id.*

### C.      **The District Court's Order**

The district court concluded that Timmins failed to satisfy the first element of *Garcetti/Pickering.* It reasoned that Timmins's speech "was related to her official duties and owed its existence to them." *Timmins*, 2023 WL 2390712, at *5. Although she went outside the chain of command, her statements "stemmed from the work she was paid to do." *Id.* The district court also thought it persuasive that Timmins's statements to reporters and private citizens were "identical to those made pursuant to her official duties" at executive sessions, *id.* at *4, and that she spoke about alleged wrongdoing "directly impacting her ability to carry out her official duties," *id.* at *5 (brackets and internal quotation marks omitted).

8

## II.    ANALYSIS

We review de novo a dismissal for failure to state a claim. *See Leverington*, 643 F.3d at 723.

### A.    *Garcetti/Pickering* Step One

On this appeal the sole question is whether Timmins spoke to the press and private citizens pursuant to her official duties—that is, "whether the speech at issue [was] itself ordinarily within the scope of [her] duties, not whether it merely concern[ed] those duties." *Lane*, 573 U.S. at 240. We take a "practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Knopf*, 884 F.3d at 946 (internal quotation marks omitted). "Many facts may be relevant—the tasks in an employee's job description, the frequency with which an employee performs a task, the subject matter of the employee's speech, the recipient of the employee's speech, the legal obligation for the employee to speak—but no one fact is determinative." *Id.* at 945 (internal quotation marks omitted). "There are no bright line rules." *Id.* (internal quotation marks omitted).

An employee does not speak pursuant to her official duties merely because her speech "owes its existence to" or "relates to" her employment. *Lane*, 573 U.S. at 235, 239 (internal quotation marks omitted) (reversing the Eleventh Circuit because it "read *Garcetti* far too broadly"). Instead, "an employee's statements are made pursuant to official duties when they stemmed from *and were the type of activities that they were paid to do*." *Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 107 F.4th 1121, 1139 (10th Cir. 2024) (emphasis added) (brackets and internal quotation marks omitted).

9

The "mere fact that a citizen's speech concerns information acquired by virtue of [her] public employment does not transform that speech into employee—rather than citizen—speech." *Lane*, 573 U.S. at 240.

### B.    Timmins's Speech

Under the proper standard, Timmins satisfied step one of *Garcetti/Pickering* in her complaint. As general counsel, Timmins was expected to provide legal advice to the Board during executive sessions. As litigation counsel her duties included filing pleadings, responding to discovery requests, and discussing legal issues and strategy with the Board during executive sessions. Her speech to reporters and private citizens may have related to her job, but it was not ordinarily within the scope of her duties. We see nothing in the complaint that would suggest that Timmins's duties included going outside the chain of command or beyond the customary duties of a lawyer to her client. The complaint does not imply, for instance, that Timmins had a duty to reveal the Defendants' malfeasance to the public and to reporters. On the contrary, such disclosure might well be prohibited by a lawyer's duty of confidentiality under the Colorado Rules of Professional Conduct (RPC), *see* Colo. RPC 1.6, comment 3, unless the lawyer would otherwise be facilitating criminal conduct, *see id.*, comment 7; Restatement (Third) of the Law Governing Lawyers § 67 (A.L.I. 2000).

Defendants say that Timmins had a "public-facing" role and therefore could not "take off her 'attorney hat' when she spoke to residents or to the press." Aplee. Br. at 26. They note that "'it is not at all unusual for a public employee's job to require contact, communication, and coordination with public and private persons

10

outside the employee's agency.'" *Id.* at 29 (quoting *Trimble v. Bd. of Cnty. Comm'rs*, 728 F. App'x 789, 795–96 (10th Cir. 2018)). We do not disagree with that general statement. For example, Timmins certainly had to communicate with opposing counsel and the courts in her role as litigation attorney. But the general statement is inapplicable here. The complaint does not indicate any reason why a general counsel or litigation attorney for the Board would have an official duty to publicly criticize the Board for rejecting her advice.

Defendants' arguments to the contrary are unpersuasive. They rely, for example, on a statement in the preamble to the Colorado RPC saying that an attorney acts as an evaluator by "'examining [her] client's legal affairs' and **reporting about them** to the client or to others.'" *Id.* at 26 (quoting Colo. RPC Preamble (brackets in brief)). But the duty to report to nonclients obviously depends on the particular circumstances, and the complaint does not support such circumstances here.

Defendants also rely a good deal on language in pre-*Lane* opinions of this court suggesting that there is no protection for statements relating to the employee's job duties. But this language in our pre-*Lane* cases contradicts *Lane* and is no longer good law. *See, e.g.*, *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007) ("[S]peech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation."); *Sarkar v. McCallin*, 636 F.3d 572, 575 (10th Cir. 2011) ("The First Amendment does not apply to speech that owes its existence to a public employee's professional responsibilities." (internal quotation marks omitted)). Indeed, *Lane* suggested that there is particular reason to

11

protect speech by public employees on matters peculiarly within their knowledge. *See Lane*, 573 U.S. at 239–40 (stating, in support of the proposition that there may be strong reasons to protect some "related" speech by public employees, that "speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment."); *see also Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d at 1332 (10th Cir. 2007) (Gorusch, J.) (recognizing that the plaintiff was no longer "seeking to fulfill her responsibility of advising the Board" when she "lost faith that the Board would listen to her advice" and "took her grievance elsewhere").

Where Defendants do cite our post-*Lane* cases, their arguments are unpersuasive. They argue that Timmins's speech is "more akin to speech from plaintiffs with 'high-ranking duties' that bear 'official significance,' which is more likely to be pursuant to official duties." Aplee. Br. at 24 (citing *Tufaro*, 107 F.4th at 1139 and *Knopf*, 884 F.3d at 949). Both cited opinions, however, are readily distinguishable. In *Tufaro* the statements were all made in-house, within the university campus, *see* 107 F.4th at 1139, not, for example, in a "letter to the editor of a newspaper," *id.* at 1140. And *Knopf* issued no holding on whether the plaintiff's statements were pursuant to his official duties; it decided the case on the second prong of qualified immunity, holding only that under the law at the time of the statements, it was not clearly established that the statements were protected. *See* 884 F.3d at 949. Perhaps more importantly, we do not contest the proposition that statements from high-ranking persons that have official significance are more likely to be pursuant to official duties. But the specific facts matter. And the facts

12

alleged in the complaint do not compel the inference that Timmins's statements to the press and the public were part of her official duties.

Finally, Defendants contend that "[s]peech 'aimed at facilitating the employee's performance of her official duty' is generally made 'pursuant to official duties.'" Aplee. Br. at 32 (quoting *Ellison v. Roosevelt Cnty. Bd. of Comm'rs*, 700 F. App'x 823, 829 (10th Cir. 2017) (citation revised)). But in *Ellison* a police officer was debating with his superior about the legality of a traffic stop. Similarly, Defendants argue that an employee is more likely to have spoken pursuant to her official duties if her speech "relate[d] to wrongdoing directly impacting [her] ability to carry out [her] official duties." Aplee. Br. at 33 (internal quotation marks omitted). But the audience for the speech is a critical factor. Few public employees have a duty to inform or sway public opinion; when other employees speak to a public audience, directly or through the press, they are not speaking pursuant to their official duties even if their purpose is ultimately to improve (or punish) the performance of their public employer so that they can work more effectively.

### C.    Alternative Grounds for Affirmance

In the alternative, Defendants ask us to affirm the district court's dismissal based either on qualified immunity or on elements two, three, or four of the *Garcetti/Pickering* test. To be sure, we have discretion to affirm on any ground supported by the record. *See Wise v. DeJoy*, 71 F.4th 744, 751 (10th Cir. 2023). But "proper judicial administration generally favors remand for the district court to examine the issue[s] initially." *Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304, 1310 (10th Cir. 2007) (internal quotation marks

omitted). And we think that to be the better course here. We leave to the district court to resolve in the first instance whether any issue has been abandoned by a party.

### III.    CONCLUSION

We **REVERSE** the district court's dismissal of Plaintiff's amended complaint and **REMAND** to the district court for further proceedings.