**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 7, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

THE ESTATE OF JAMES ROEMER,

    Plaintiff - Appellant,

v.

DAVID JOHNSON, in his individual
capacity; NATHAN ALGIEN, in his
individual capacity; THOMAS BOYER, in
his individual capacity; CHASE FELZEIN,
in his individual capacity; ALI SHOAGA,
in his individual capacity,

    Defendants - Appellees.

No. 17-1418
(D.C. No. 1:14-CV-01655-PAB-NYM)
(D. Colo.)

_____

**ORDER AND JUDGMENT** [*]
_____

Before **HOLMES**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

This appeal arises from the June 13, 2012 murder of James Roemer at the

hands of his cellmate, Paul Farley.

Just shy of the two-year anniversary of Roemer's death, his estate (the Estate)

brought suit against several prison officials (the defendants) under 42 U.S.C. § 1983,

alleging that they violated Roemer's Eighth Amendment rights by displaying

---

[*] This order and judgment isn't binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. But it may be cited for its
persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

deliberate indifference to the substantial risk of serious harm that Farley posed to Roemer's safety. The defendants then moved for summary judgment, arguing that the Estate's claims against them were time-barred under the applicable two-year statute of limitations. Specifically, the defendants asserted that the Estate's claims accrued approximately ten days before Roemer's death—i.e., on or about June 3, 2012—and that the statute of limitations therefore expired approximately nine days before the Estate filed its June 12, 2014 complaint.

The district court agreed and granted summary judgment to the defendants. But in doing so, the district court erred: in determining when the Estate's claims against the defendants accrued, it evaluated those claims collectively, rather than individually. Instead, the district court should have separately analyzed when the Estate's claim against *each individual defendant* accrued. *See Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018).

In light of this error, the only remaining question before us is whether the defendants have shown that under the individualized approach our cases demand, the Estate's claims against each of the defendants accrued more than two years before the Estate brought its claims. With one exception, we hold that the defendants fail to make this showing. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.[1]

_____

[1] In doing so, we need not and do not decide when the Estate's claims accrued. We hold only that, with one exception, the defendants fail to demonstrate those claims accrued more than two years before the Estate filed suit against them. *See Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir.

## Background

Farley murdered Roemer while the two men were incarcerated together at the Sterling Correctional Facility (SCF) in Sterling, Colorado.[2] Farley came to SCF by way of Arizona, where he spent several years in the custody of the Arizona Department of Corrections (ADOC).

In advance of Farley's transfer, ADOC Case Manager Herb Haley sent a letter to the Colorado Department of Corrections (CDOC) detailing Farley's "extensive disciplinary history." App. vol. 5, 1316. Thus, CDOC was aware of that history when Farley came into its custody in July 2011. In particular, Haley's letter relayed that Farley (1) sexually assaulted a previous cellmate with a lethal weapon; (2) helped an inmate in another cell commit suicide by strangling that inmate "with a braided [bedsheet] that was passed through the cell vents"; (3) admitted to attempting to secure placement in protective segregation so he could kill another inmate housed there; (4) used force to escape custody during transport; and (5) made statements such as, "I just want to do somebody," and "I want to put steel in someone." App. vol. 2, 467.

---

2014) ("The statute of limitations is an affirmative defense, so the defendant, as the moving party, bears the burden of demonstrating that there is no material fact in dispute on the issue of whether the statute of limitations bars the claim." (citations omitted)).

[2] We take the bulk of these historical facts from the district court's orders granting summary judgment. We view those facts in the light most favorable to the Estate as the nonmoving party. *See Knopf v. Williams*, 884 F.3d 939, 946 (10th Cir. 2018). We also resolve all factual disputes and draw all reasonable inferences in its favor. *See id.*

Notably, Haley's letter acknowledged the possibility that Farley made these last statements in an effort "to ensure a single cell." *Id.* But given Farley's violent history, Haley concluded that Farley "clearly [constituted] a threat to[] other inmates"—a conclusion that found additional support in other documents that ADOC submitted to CDOC in anticipation of Farley's transfer. *Id.* For instance, ADOC provided CDOC with a disciplinary report describing an incident in which Farley sliced a cellmate's back open with "what appeared to be a razor blade." App. vol. 3, 647.

After receiving this information, CDOC scheduled a hearing to determine whether it should house Farley in administrative segregation or instead place him with the general prison population. The notice for that placement hearing expressly acknowledged both Farley's "extensive" history of violent behavior and the "threat" that Farley "pose[d] . . . to the safety and security of . . . other offenders." App. vol. 2, 477.

Case Manager Ali Shoaga chaired the three-person committee that conducted the placement hearing. Prior to the hearing, Shoaga reviewed the materials provided by ADOC, including Haley's letter. And Shoaga later admitted that he "was aware" at the time of the hearing that Farley "posed more than a low risk." App. vol. 5, 1318. Nevertheless, on September 1, 2011, Shoaga recommended placing Farley with the general prison population rather than in administrative segregation. David Johnson, an associate warden with the Denver Reception and Diagnostic Center, approved

4

Shoaga's recommendation the next day. And Offender Services Classification Officer Nathan Algien then reviewed the ADOC materials and assigned Farley to SCF.

On September 22, 2011, CDOC transferred Farley to SCF and placed him in general population, where he "was required to have a cellmate." *Id.* at 1319. Approximately nine months later, Corrections Officer Thomas Boyer and Housing Lieutenant Chase Felzein approved a request from Farley and Roemer in which the two men asked to share a cell. At that point, the Estate alleges, Roemer was "serving a two-year sentence for trespassing and was due to be released within months." Aplt. Br. 2.

As the Estate would later discover, CDOC had in place a policy that governed requests for such "convenience moves." App. vol. 2, 336. Generally speaking, that policy warned against housing "aggressive" offenders with "at risk" offenders. *Id.* For instance, the policy stated that prison officials should not "allow an inmate doing a short sentence [to] live with an inmate doing a long sentence." *Id.* Similarly, it warned against housing "[o]ffenders [who] exhibit Sexual Aggressive Behaviors (SAB)" with "offenders identified as Sexual Vulnerability at Risk (SVR)." *Id.*

Despite these warnings, and despite the fact that both Boyer and Felzein were allegedly aware of Farley's history, Boyer and Felzein assigned Roemer and Farley to share a cell. Shortly thereafter, Roemer began to fear that Farley posed a threat to his safety. In particular, the district court found that "[b]y March 25, 2012, [Roemer] believed that [Farley] was a murderer and [had] expressed concerns about his safety" to his mental-health provider. App. vol. 5, 1328. The district court also found that,

5

"[s]hortly thereafter, [Farley] aggressively pinned [Roemer] against the wall of his cell and asked, 'Don't you know what I could do to you?'" *Id.* at 1328–29 (quoting App. vol. 3, 771). Subsequently, on or about June 3, 2012, Roemer informed Boyer of his safety concerns and requested a cell reassignment. Boyer immediately denied Roemer's request. Approximately ten days later, on June 13, 2012, Farley strangled Roemer to death in the cell that the two men shared.

Almost two years after Roemer's murder, the Estate filed its initial complaint naming 17 defendants, including Felzein, Boyer, and Shoaga.[3] It did not name Johnson or Algien. In relevant part, the Estate's June 12, 2014 complaint alleged that Felzein, Boyer, and Shoaga violated the Eighth Amendment by displaying deliberate indifference to the substantial risk of serious harm that Farley posed to Roemer's safety.

Felzein, Boyer, and Shoaga moved to dismiss, arguing that the complaint failed to state a claim and that they were entitled to qualified immunity. The district court denied the motion as to Shoaga. But it granted the motion to dismiss as to Felzein and Boyer. Notably, in doing so, the district court explained that to adequately plead its Eighth Amendment claims, the Estate was "required to allege that *each* defendant personally participated in the alleged constitutional violation and that *each* defendant acted or failed to act in spite of subjective awareness of a substantial risk of serious harm." App. vol. 1, 141 (emphases added). And the court

---

[3] Of the claims the Estate identified in its initial complaint, only the claims against Felzein, Boyer, and Shoaga are at issue in this appeal.

then chastised the Estate for failing to "identify[] specific allegations supporting [the Estate's] claim against *each* individual defendant." *Id.* (emphasis added).

After the district court dismissed the claims against Felzein and Boyer, the Estate proceeded to conduct discovery regarding its remaining claim against Shoaga. Based on the information it obtained during the course of that discovery, the Estate then moved to file an amended complaint that (1) asserted new Eighth Amendment claims against Johnson and Algien and (2) repleaded the Estate's Eighth Amendment claims against Felzein and Boyer. The district court granted the Estate's motion for leave to amend, and the Estate filed its amended complaint on April 7, 2017.

In the meantime, Shoaga moved for summary judgment. As relevant here, he argued that the Estate's claim against him was barred by the applicable two-year statute of limitations. Specifically, Shoaga asserted that the Estate's claim accrued as soon as Roemer knew or should have known that his Eighth Amendment rights were violated. And Shoaga further alleged that Roemer had this information on or about June 3, 2012—the date upon which (1) Roemer informed Boyer of his safety concerns and requested a cell reassignment and (2) Boyer denied that request. Thus, Shoaga maintained, the Estate's June 12, 2014 complaint came nine days too late.

The district court agreed and granted summary judgment to Shoaga. Johnson, Algien, Felzein, and Boyer then moved for summary judgment, incorporating by reference Shoaga's statute-of-limitations argument. The Estate opposed their motion for summary judgment and also asked the district court to reconsider its earlier order granting summary judgment to Shoaga.

7

The district court denied the Estate's motion to reconsider. And it determined—after applying the same analysis it applied to the Estate's claim against Shoaga—that the Estate's claims against the remaining defendants were likewise time-barred. Thus, the district court granted the remaining defendants' motion for summary judgment and entered judgment in favor of all five defendants. The Estate appeals.

**Analysis**

The Estate argues that the district court erred in treating its claims as time-barred and in granting summary judgment to the defendants on that basis. In support, the Estate advances three arguments. First, it asserts that the district court erred in failing to separately analyze when the Estate's claims against each individual defendant accrued. Second, the Estate argues that under such an individualized approach, the defendants failed to demonstrate that the Estate's claims against each of the individual defendants accrued more than two years before the Estate filed suit against them. Third, the Estate argues that even assuming it filed suit more than two years after its claims accrued, it is nevertheless entitled to equitable tolling. We review the Estate's first two arguments de novo. *See Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). To the extent we reach the Estate's third argument, we review only for abuse of discretion. *See Chance v. Zinke*, 898 F.3d 1025, 1034 (10th Cir. 2018).

8

## I.     The Test for Accrual

In granting the defendants' motions for summary judgment, the district court first determined that the Estate's Eighth Amendment claim against *one* of the defendants accrued more than two years before the Estate filed suit. And it then reasoned that the Estate's Eighth Amendment claims against *all* of the defendants therefore did so as well. But according to the Estate, our recent decision in *Vasquez v. Davis*, 882 F.3d 1270 (10th Cir. 2018), expressly forecloses such a collective approach to the accrual analysis. Instead, the Estate asserts, *Vasquez* requires an individualized assessment of each of the Estate's claims against each of the separate defendants. *See* 882 F.3d at 1276 (holding that plaintiff's Eighth Amendment claims "accrued . . . separately for each of the[] [d]efendants"). For the reasons discussed below, we agree with the Estate.

In *Vasquez*—which we decided after the district court entered judgment in this case but before the parties filed their opening briefs—the plaintiff alleged that five CDOC medical providers (Jeanne Davis, Brian Webster, Kathleen Melloh, Gatbel Chamjock, and Maurice Fauvel) violated his Eighth Amendment rights by displaying deliberate indifference to his serious medical needs. *See* 882 F.3d at 1272–74. The district court granted summary judgment to Davis, Webster, Melloh, and Chamjock, concluding that because the plaintiff brought suit more than two years after his claims against them accrued, those claims were untimely under the applicable two-year statute of limitations. And the district court granted summary judgment to Fauvel as well, ruling that the plaintiff failed to show Fauvel acted with deliberate

9

indifference. We affirmed in both respects. *Id.* at 1272. Critically, in affirming the district court's statute-of-limitations ruling, we mapped out the analytical path a court must follow in determining when claims like the ones at issue here accrue. *See id.* at 1275–76.

We began by citing the general principle that a plaintiff's claims accrue once he or she can "file[] suit and obtain[] relief." *Id.* at 1276; *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (explaining that plaintiff's claim accrues "when the plaintiff has 'a complete and present cause of action'" (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997))).[4] Notably, a plaintiff doesn't have a complete cause of action unless and until he or she "knows or has reason to know of the injury" that forms the basis of that action. *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993). And as *Vasquez* recognizes, for purposes of a § 1983 claim, the relevant "injury" is the alleged constitutional violation. *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998); *see also Vasquez*, 882 F.3d at 1276. Thus, a § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith*, 149 F.3d at 1154 (quoting *Lawshe v. Simpson*, 16 F.3d 1475, 1478

---

[4] At oral argument, the defendants asserted—without support—that the date upon which a § 1983 claim accrues is different from the date upon which a plaintiff can adequately plead that claim. We disagree. Although it may "theoretically [be] possible for a statute to create a cause of action that accrues at one time for the purpose of calculating when the statute of limitations begins to run, but at another time for the purpose of bringing suit, we will not infer such an odd result in the absence of any such indication in the statute." *Bay Area Laundry*, 522 U.S. at 201 (quoting *Reiter v. Cooper*, 507 U.S. 258, 267 (1993)).

(7th Cir. 1994)); *see also id.* (explaining that to determine when § 1983 claim accrues, court must first "identify the constitutional violation and locate it in time" (quoting *Lawshe*, 16 F.3d at 1478)).

We next explained in *Vasquez* that a plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue.[5] 882 F.3d at 1275. Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in

---

[5] A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal. *See, e.g.*, *Welch v. Saunders*, 720 F. App'x 476, 479 (10th Cir. 2017) (unpublished) (citing personal-participation requirement and affirming order dismissing plaintiffs' § 1983 claims because their complaint failed to include sufficient "particulars"); *Lewis v. Clark*, 663 F. App'x 697, 703 (10th Cir. 2016) (unpublished) ("The district court ruled that [plaintiff's] complaint fails to state any individual-capacity claim against [defendant] . . . because [plaintiff] didn't allege any personal participation by [defendant] in any of the alleged constitutional violations . . . . We discern no error in the district court's analysis . . . ."); *Sherman v. Klenke*, 653 F. App'x 580, 590–91 (10th Cir. 2016) (unpublished) ("The district court properly dismissed [plaintiff's] Eighth Amendment claim against [defendant] because the complaint fails to sufficiently allege [defendant's] personal participation in the alleged constitutional violation."). In fact, we have gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous. *See, e.g.*, *Esnault v. Suthers*, 24 F. App'x 854, 855–56 (10th Cir. 2001) (unpublished) (affirming district court's order dismissing complaint as frivolous where "complaint fail[ed] to demonstrate sufficient facts showing how each individual defendant participated in the alleged violation of [plaintiff's] constitutional rights"; noting that personal-participation showing "is essential to a § 1983 action"). That is, we have indicated that such allegations don't even give rise to an "arguable," albeit ultimately "unsuccessful," claim; instead, such a claim is "so defective that [it] should never have been brought at the outset." *Neitzke v. Williams*, 490 U.S. 319, 328–29 (1989).

11

lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532–33 (10th Cir. 1998)) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants—"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"—and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

We then pointed out in *Vasquez* that an Eighth Amendment deliberate-indifference claim has both an objective and a subjective component. 882 F.3d at 1275; *see also Farmer v. Brennan*, 511 U.S. 825, 833–34, 837 (1994) (explaining that prison officials violate prisoner's Eighth Amendment right to be free "from violence at the hands of other prisoners" when (1) inmate is "incarcerated under conditions posing a substantial risk of serious harm" from another inmate or inmates and (2) those prison officials are deliberately indifferent to relevant risk—that is, they "know[] of and disregard[] an excessive risk to inmate health or safety").

Next, we combined the personal-participation requirement with the deliberate-indifference test and concluded that, in order "[t]o recover as to a *particular* [d]efendant," the plaintiff in *Vasquez* would ultimately be required "to prove *as to*

12

*that* [*d*]*efendant* both an objective and a subjective element of his claim." 882 F.3d at 1275 (emphases added). And we reasoned that "[t]o prove the subjective element of his claim," the plaintiff therefore "had to show for *each* . . . [*d*]*efendant* that *such* [*d*]*efendant*" was aware of and disregarded a substantial risk of serious harm. *Id.* (emphases added).

Finally, we combined (1) the general test for accrual, (2) the personal-participation requirement, and (3) the elements of a deliberate-indifference claim to formulate the applicable framework for determining when the plaintiff's claims in *Vasquez* accrued. Specifically, we said:

> In light of the objective and subjective elements of [the plaintiff's] Eighth Amendment claims, those claims accrued when he "knew or had reason to know[,]" *separately for each of these* [*d*]*efendants*—Davis, Webster, Chamjock[,] and Melloh—to be liable, that they had acted with deliberate indifference to a known risk to [the plaintiff's] medical needs . . . .

*Id.* (second alteration in original) (emphasis added) (citation omitted) (quoting *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011)).

Perhaps even more important than what we said in *Vasquez*, though, is what we *didn't* say—or rather, what we didn't do. We did not (as the district court did here) simply determine the earliest date upon which the plaintiff could have brought his Eighth Amendment claim against *any* defendant and then conclude that the plaintiff's Eighth Amendment claims against *all* of the defendants necessarily accrued on that same date. This much is clear from our analysis of the plaintiff's claim against Fauvel, the fifth and final medical provider at issue in *Vasquez*.

13

In *Vasquez*, the plaintiff brought suit against all five medical providers (including Fauvel) in May 2014. *See* 882 F.3d at 1275. We concluded that the plaintiff's deliberate-indifference claims against the other four medical providers accrued no later than February 2012. *Id.* at 1276. Thus, if the date upon which a plaintiff's deliberate-indifference claim accrues against *any one* defendant is the date upon which that plaintiff's deliberate-indifference claims accrue against *all* defendants (as the district court here suggested), then we would have concluded that the plaintiff's claim against Fauvel was *also* time-barred. That is, we would have concluded that the claim against Fauvel likewise accrued no later than February 2012, thus rendering the plaintiff's May 2014 complaint untimely as to Fauvel.

But we didn't take this approach. On the contrary, we explained that the plaintiff's claim against Fauvel was "different." *Id.* at 1277. In particular, we pointed out that "almost all of Fauvel's interactions with [the plaintiff] occurred within the two-year period immediately preceding his filing this suit." *Id.* Thus, we concluded, "Fauvel's deliberate indifference as part of these interactions would support a timely claim *against him*." *Id.* (emphasis added). And in doing so, we necessarily recognized that when a plaintiff brings § 1983 claims against multiple defendants, the analysis for determining when the plaintiff's claims accrued as to each of those defendants is an individualized one. Thus, the Estate alleges, the district court erred in failing to perform that individualized assessment here.

The defendants lodge two objections to the Estate's reading of *Vasquez*. First, they assert that to the extent we "made reference to determining a date of accrual

14

'separately'" for each defendant in *Vasquez*, we did so only because Davis, Webster, Melloh, and Fauvel "were represented by [one] attorney," while Chamjock "was represented by" another. Aplee. Br. 35 (quoting *Vasquez*, 882 F.3d at 1276). According to the defendants, these two different attorneys "asserted *different* dates of accrual" in their briefing below, thus explaining why we didn't apply a single accrual analysis to all of the plaintiff's claims in *Vasquez*. *Id.*

But the defendants fail to identify any textual support for this novel interpretation of *Vasquez*, and we see none. In particular, our analysis in *Vasquez* makes no mention of the defendants' different attorneys. Nor does it reference their allegedly disparate theories regarding when the claims against their respective clients accrued. What's more, we generally discussed Davis, Webster, Melloh, and Chamjock together and then separately addressed Fauvel—despite the fact that it was Chamjock, rather than Fauvel, who was represented by a different attorney. *See Vasquez*, 882 F.3d at 1272, 1275–79. We therefore reject the defendants' argument that this procedural irregularity drove the result in *Vasquez*.

Alternatively, the defendants assert that even assuming *Vasquez* supports the Estate's position, our decision in *Vasquez* could not and did not "overturn" our earlier decisions in *Alexander v. Oklahoma*, 382 F.3d 1206 (10th Cir. 2004), and *Baker*, 991 F.2d 628. Aplee. Br. 34; *see also United States v. Burns*, 800 F.3d 1258, 1261 n.6 (10th Cir. 2015) ("[A] panel of this court cannot overrule a prior panel's decision . . . ."). But neither *Alexander* nor *Baker* addresses (1) the personal-participation requirement or (2) the subjective component of an individual-liability

15

deliberate-indifference claim, let alone explains how these considerations impact the accrual analysis when a plaintiff asserts that multiple defendants were deliberately indifferent in different ways and on different dates. Our decision in *Vasquez*, on the other hand, does. Thus, *Vasquez* controls our analysis. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions [that] merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1084 (10th Cir. 2011) ("It is elementary that an opinion is not binding precedent on an issue it did not address.").

In short, *Vasquez* unequivocally and expressly holds that when a plaintiff brings deliberate-indifference claims against multiple defendants in a § 1983 action, those claims may accrue "separately for each of th[o]se [d]efendants," depending on when the plaintiff knew or had reason to know that each of those defendants acted with deliberate indifference, i.e., that each of those defendants knew of and disregarded a substantial risk of serious harm. *Id.*

This holding is entirely consistent with the earlier binding authority we cite above. *See Wallace*, 549 U.S. at 388; *Farmer*, 511 U.S. at 834, 837; *Pahls*, 718 F.3d at 1225; *Robbins*, 519 F.3d at 1250; *Tonkovich*, 159 F.3d at 532–33; *Smith*, 149 F.3d at 1154. What's more, it's consistent with the Third Circuit's recent decision *Mullin v. Balicki*, 875 F.3d 140 (3d Cir. 2017)—a case with facts that are remarkably similar to those before us here.

16

In *Mullin*, the Third Circuit indicated that when a plaintiff alleges multiple defendants violated the plaintiff's Eighth Amendment rights by acting with deliberate indifference on different dates and in different ways, the plaintiff's claims against each of those various defendants may well accrue on different dates, depending on when the plaintiff knew or should have known "of the elements comprising [each] separate injury." 875 F.3d at 158–60. More specifically, the Third Circuit noted that the plaintiff's claims against the defendants named in her initial complaint "stemmed from a different [and earlier] asserted injury" than the plaintiff's claim against a different defendant whom she named in her subsequent proposed amended complaint. And because the plaintiff "could not have learned of the particular nature of *this* [later constitutional violation]—or who was at fault—until" less than two years before she attempted to amend her complaint, the Third Circuit held that her "attempt to amend therefore fell well within the applicable two-year limitations period." *Id.* at 159.

Notably, that is precisely the scenario before us in this appeal. That is, the Estate doesn't allege that all of the defendants were deliberately indifferent when, on the same date, they *all* participated in the decision to house Farley with the general prison population, rather than in administrative segregation. Nor does the Estate allege that all of the defendants were deliberately indifferent when, on the same date, they *all* participated in assigning Roemer and Farley to the same cell. Instead, the Estate alleges that (1) Shoaga was deliberately indifferent when, on September 1, 2011, he recommended housing Farley with the general prison population;

17

(2) Johnson was deliberately indifferent when, on September 2, 2011, he ratified Shoaga's placement recommendation; (3) Algien was subsequently deliberately indifferent in assigning Farley to SCF; (4) Felzein was deliberately indifferent when, approximately nine months after Farley arrived at SCF, Felzein agreed to allow Farley and Roemer to share a cell; and (5) Boyer was deliberately indifferent in both agreeing to allow Farley and Roemer to share a cell and in subsequently denying Roemer's request for a cell reassignment on or about June 3, 2012.

Under these circumstances, the district court was required to separately analyze when the Estate's claims against each of these defendants accrued. *See Vasquez*, 882 F.3d at 1276 (holding that, "[i]n light of the objective and subjective elements of [plaintiff's] Eighth Amendment claims, those claims accrued when he 'knew or had reason to know[,]' separately for each of the[] [d]efendants . . . , that they had acted with deliberate indifference to a known risk to [plaintiff's] medical needs" (third alteration in original) (citation omitted)); *Mullin*, 875 F.3d at 158–60; *cf. Tonkovich*, 159 F.3d at 532 (holding that district court's analysis of plaintiff's constitutional claims was "infirm because it lump[ed] all of [the defendants] together despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]").

But the district court failed to do so. Instead, it reasoned that the Estate's claims all accrued on or about June 3, 2012—i.e., the date upon which (1) Roemer informed Boyer of his safety concerns and requested a cell reassignment and (2) Boyer denied that request. By then, the district court deduced, Roemer "knew that

18

[Farley] posed an objectively serious risk to [Roemer's] safety." App. vol. 5, 1329. And "Roemer also knew or had reason to know *that prison officials* disregarded the risk to his safety because [Boyer] immediately denied [Roemer's] request to be moved out of the cell." *Id.* (emphasis added).

In applying this collective approach to the accrual analysis, rather than the individualized assessment our cases require, the district court erred. Thus, we must next determine whether, under the appropriately individualized inquiry set forth above, the defendants have demonstrated that the Estate's claims against them accrued more than two years before the Estate filed those claims. *See* Colo. Rev. Stat. § 13-80-102 (setting forth applicable statute of limitations); *Robert L. Kroenlein Tr.*, 764 F.3d at 1274 (explaining that defendant bears burden of demonstrating that statute of limitations bars plaintiff's claims).

## II. Applying *Vasquez*'s Individualized Approach

Notably, the defendants make no effort to establish that, under the individualized approach we outline above, the Estate's claims against Shoaga, Johnson, Algien, or Felzein accrued more than two years before the Estate brought suit against them. Instead, the defendants merely double down on their initial assertion that the Estate's claims against these four defendants accrued when Roemer knew or should have known that *Boyer* knew of and disregarded the substantial risk of harm that Farley posed. For the reasons discussed above, we reject this argument. And because we see no indication that Shoaga, Johnson, Algien, or Felzein are entitled to summary judgment under the individualized accrual analysis our caselaw

19

requires, we reverse the district court's orders granting summary judgment to Shoaga, Johnson, Algien, and Felzein.

That leaves only the district court's order granting summary judgment to Boyer. In asking us to reverse that order as well, the Estate cites CDOC's policy governing convenience moves, argues that Boyer violated this policy by allowing Roemer and Farley to live together, and notes that this policy only surfaced "[d]uring the course of discovery conducted in this matter." Aplt. Br. 6. Further, the Estate points out, the district court initially dismissed its claim against Boyer for failure to state a claim. And according to the Estate, it wasn't until the Estate identified CDOC's policy that the district court "permitted [its] claim against Boyer to proceed." *Id.* at 26. Thus, the Estate maintains, its claim against Boyer necessarily didn't accrue until the policy was or should have been discovered. *See Wallace*, 549 U.S. at 388 (holding that claim accrues "when the plaintiff has 'a complete and present cause of action,'"—i.e., "when 'the plaintiff can file suit and obtain relief'" (quoting *Bay Area Laundry*, 522 U.S. at 201)).

But the Estate's argument mischaracterizes the basis for the district court's initial ruling dismissing the Estate's claim against Boyer. In dismissing that claim, the district court noted the Estate failed to allege that when Roemer asked Boyer for a cell reassignment, Roemer "provided [Boyer] with a reason for his request." App. vol. 1, 132. Thus, the district court dismissed the Estate's claim against Boyer not because the Estate failed to allege facts showing that Boyer violated CDOC policy in allowing Roemer and Farley to share a cell, but because the Estate failed to allege

20

that Boyer was subjectively aware, when he later denied Roemer's reassignment request, that Farley posed a substantial risk of serious harm to Roemer's safety. *See Farmer*, 511 U.S. at 829 (holding that prison official cannot be deliberately indifferent to substantial risk of serious harm unless that "official was subjectively aware of the risk"). Later, however, the Estate alleged that Roemer informed Boyer "he could not live with [Farley] *due to safety concerns*." App. vol. 3, 765 (emphasis added). And regardless of whether the district court relied on this new allegation in subsequently allowing the Estate to replead its claim against Boyer, this allegation is sufficient to establish that on or about June 3, 2012, Roemer knew or should have known that Boyer knew of and disregarded the substantial risk of serious harm that Farley posed to Roemer's safety. Accordingly, Roemer's claim against Boyer accrued on or about that date.

Nevertheless, that doesn't automatically entitle Boyer to summary judgment on statute-of-limitations grounds. Instead, according to the Estate, the doctrine of equitable tolling operates to render timely its claim against Boyer. *See Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004) ("Courts apply the doctrine of equitable tolling to suspend a statute of limitations period when 'flexibility is required to accomplish the goals of justice.' For example, we have tolled the statute of limitations when plaintiffs did not timely file their claims because of 'extraordinary circumstances' or because defendants' wrongful conduct prevented them from doing so." (citation omitted) (quoting *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d

21

1094, 1096–97 (Colo. 1996))). We therefore turn next to the Estate's equitable-tolling argument.

## III.   Equitable Tolling

In its third and final argument, the Estate asserts that "[Roemer] and [the] Estate are entitled to tolling during the period that would have been available to Roemer, had he not been murdered, to pursue his administrative remedies." Aplt. Br. 28 (citing *Roberts v. Barreras*, 109 F. App'x 224, 226 (10th Cir. 2004) (unpublished) ("Every circuit to address the issue has held that the filing of a mandatory administrative grievance tolls the statute of limitations for § 1983 . . . claims.")).

But in advancing this argument, the Estate fails to "cite the precise reference[] in the record where the [argument] was raised and ruled on" below. 10th Cir. R. 28.1(A). Further, the Estate fails to make a plain-error argument. This presents a problem. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court."). But the bigger problem is that the Estate *did* raise this argument below. Specifically, it raised its tolling argument for the first time in its motion to reconsider the district court's order granting summary judgment to Shoaga. Thus, the district court treated the argument as waived and declined to consider it. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (noting that motion to reconsider is "inappropriate vehicle[]" in which to advance new arguments that litigant could have presented previously).

22

Because the Estate fails to acknowledge—let alone challenge—the district court's waiver ruling, the Estate necessarily fails to demonstrate the district court abused its discretion in declining to equitably toll the statute of limitations. *See Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) (noting that appellant cannot prevail on appeal "if the reasons that were given by the district court" for rejecting an argument "go unchallenged"; instead, appellant must "explain what was wrong with the reasoning that the district court relied on in reaching its decision"). And because that means the district court's equitable-tolling ruling stands on appeal, *see id.* at 1369, we conclude that the Estate's claim against Boyer is time-barred. We therefore affirm the district court's order granting summary judgment to Boyer.

## Conclusion

For the reasons discussed above, the district court erred in concluding that the Estate's claims against *all* the defendants were time-barred without first asking when the Estate's claims against *each* defendant accrued. Further, with the exception of Boyer, the defendants fail to demonstrate that under such an individualized approach, the Estate's claims accrued more than two years before it filed suit. Accordingly, although we affirm the district court's order granting summary judgment to Boyer, we reverse the district court's orders granting summary judgment to Shoaga, Johnson, Algien, and Felzein and remand to the district court for further proceedings

23

on the Estate's claims against them.

Entered for the Court


Nancy L. Moritz
Circuit Judge